**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | | |
|---|---|---|
| | : | |
| | : | |
| U.S. COMMODITY FUTURES TRADING | : | CIVIL ACTION NO. 15-cv-09196 |
| COMMISSION, | : | |
| | : | |
| PLAINTIFF, | : | Hon. Amy J. St. Eve |
| | : | |
| v. | : | |
| | : | |
| IGOR B. OYSTACHER and | : | |
| 3 RED TRADING LLC, | : | |
| | : | |
| DEFENDANTS. | : | |
| | : | |
| | : | |
| | : | |
| | : | |

**REPORT OF DANIEL R. FISCHEL**

**I.     QUALIFICATIONS**

1.      I am President of Compass Lexecon, a consulting firm that specializes in the application of economics to a variety of legal and regulatory issues.  I am also the Lee and Brena Freeman Professor of Law and Business Emeritus at The University of Chicago Law School.  I served previously as Dean of The University of Chicago Law School, Director of the Law and Economics Program at The University of Chicago, and as Professor of Law and Business at The University of Chicago Graduate School of Business, the Kellogg School of Management at Northwestern University, and at the Northwestern University Law School.

2.      Both my research and my teaching have concerned the economics of corporate law and financial markets.  I have published approximately fifty articles in leading

legal and economics journals and am coauthor, with Judge Frank Easterbrook of the Seventh

Circuit Court of Appeals, of the book The Economic Structure of Corporate Law (Harvard

University Press). Courts of all levels, including the Supreme Court of the United States, have

cited my articles as authoritative. My curriculum vitae, which contains a list of my publications,

is attached hereto as Appendix A.

    3.  I have served as a consultant or advisor on economic issues to, among

others, the United States Department of Justice, the United States Securities and Exchange

Commission, the National Association of Securities Dealers, the New York Stock Exchange, the

Chicago Board of Trade, the Chicago Board Options Exchange, the Chicago Mercantile

Exchange, the New York Mercantile Exchange, the United States Department of Labor, the

Federal Deposit Insurance Corporation, the Resolution Trust Corporation, the Federal Housing

Finance Agency, and the Federal Trade Commission.

    4.  I am a member of the American Economic Association and the American

Finance Association. I am also a member of the Board of Governors of the Becker Friedman

Institute at the University of Chicago. I am a former Advisor to the Corporate Governance

Project at Harvard University, a former member of the Board of Directors of the Center for the

Study of the Economy and the State at The University of Chicago, and former Chairman of the

American Association of Law Schools' Section on Law and Economics. I have testified as an

expert witness in multiple proceedings in federal and state courts across the country, as detailed

in Appendix A.

## II.  BACKGROUND, ASSIGNMENT AND SUMMARY OF CONCLUSIONS

    5.  The U.S. Commodity Futures Trading Commission ("Plaintiff" or the

"CFTC") alleges that Igor B. Oystacher ("Oystacher") and the company he owns and controls, 3

Red Trading LLC ("3 Red") (collectively "Defendants"), intentionally and repeatedly engaged in

a manipulative and deceptive spoofing scheme during the period from December 2011 to

January 2014 (the "relevant period").[1]  The alleged spoofing scheme included:

    i.    placing at least one, and in many instances multiple "spoof orders" on one side of the market with the intent to cancel these orders before execution;

    ii.    placing these orders at or near the best bid or offer price as passive orders, behind existing orders;

    iii.    placing these orders for a large number of contracts, at least doubling the number of contracts offered or bid at those price levels or better, to create the false impression of market depth and book pressure on that side of the market, in order to induce other market participants (including both manual traders and those using computer algorithms to make trading decisions) to place orders on the same side of the market;

    iv.    canceling all of the spoof order(s) simultaneously within one second of entry, largely before they could execute;

    v.    using the "avoid orders that cross" functionality to place "flip" order(s) as aggressive order(s) which would simultaneously (within 5 milliseconds) cancel any opposite order(s) at the same or better price; and

    vi.    often placing the aggressive flip orders as partially visible "iceberg" orders to maximize the likelihood they would be filled.[2]

The CFTC alleges that Defendants engaged in this pattern of allegedly manipulative and

deceptive spoofing at least 1316 times on 51 trading days during the relevant period, while

trading contracts in five products (the "relevant products") on four exchanges (the "relevant

exchanges"):  the High Grade Copper Futures Contract ("Copper" or the "Copper contract"),

which trades on the Commodity Exchange Inc. ("COMEX"); the Light Sweet Crude Oil Futures

Contract ("Crude Oil" or the "Crude Oil contract"), which trades on the New York Mercantile

---

1.  Complaint, ¶¶ 2-4.
2.  Id., ¶ 54.  A passive order is one that is at the same or worse price than either the lowest existing sell order or the highest existing buy order at the time of entry.  Id., ¶ 26.  Thus, a passive sell order is one that is a sell order at a higher price than the best bid, and a passive buy order is a buy order at a lower price than the best offer.  An Iceberg order, which is also known as a hidden quantity order, is an order type whose order quantities (i.e., the number of contracts) are only partially visible to other market participants.  Id., ¶ 27.

Exchange ("NYMEX"); the Henry Hub Natural Gas Futures Contract ("Natural Gas" or the "Natural Gas contract"), which trades on NYMEX; the E-Mini Standard & Poor's 500 Stock Price Index Futures Contract ("E-Mini', the "E-Mini contract" or the "E-Mini S&P 500 contract"), which trades on the Chicago Mercantile Exchange ("CME"); and the Volatility Index Futures Contract ("VIX" or the "VIX contract"), which trades on the CBOE Futures Exchange ("CFE").[3]

5.      The CFTC retained Hendrik Bessembinder "to describe and evaluate Mr. Oystacher's orders and trades" in the relevant products on the 51 trading days identified in the Complaint.[4]  Professor Bessembinder was also asked to examine data concerning Mr. Oystacher's orders and trades in the April 2013 VIX contract on March 8, 13 and 14, 2013; the December 2014 E-Mini contract on September 15-17, 2014; and the June 2015 E-Mini contract on April 23, 2015, April 28, 2015, and May 4, 2015.[5]  Thus, Professor Bessembinder evaluated orders and trades for the five relevant products on a total of 60 trading days.[6]

6.      In performing his analysis, Professor Bessembinder focuses on what he refers to as "flips" (or "flip events") which he defines "as the cancellation of an order followed by an opposite side order entry within .005 seconds and at the same or better price."[7]  According

---

3.  Id., ¶ 4, ¶ 55 & Exhibit A.  The CME Group's electronic trading platform, Globex, offers market participants the opportunity to electronically trade Copper, Oil, Natural Gas, and E-Mini contracts. Id., ¶ 20.  The CFE's "Command Platform" offers electronic trading in its VIX contract.  Id.  During the relevant period, market participants were able to place Iceberg orders for Crude Oil, Copper, Natural Gas, and E-Mini contracts, but not for the VIX contract.  Id., ¶ 27.
4.  Expert Report of Hendrik Bessembinder, November 2, 2015 ("Bessembinder Report"), ¶¶ 6-7.
5.  Id., ¶ 7.
6.  Id., ¶ 6.  Professor Bessembinder analyzed two types of data:  "Order Messaging Data" and "Market Data."  Id., ¶¶ 14-15.  Order Messaging Data, which is compiled by the exchanges and is not generally made available to market participants, contains records for each individual order submission, modification, or cancellation, as well as trades executed against those orders.  Id., ¶ 14. Market Data is available to subscribing traders in real time, and reflects the aggregate displayed quantities of unexecuted contracts and orders in the limit order book at the best bid and ask, as well as the next nine price levels (or four in the case of the VIX contract).  Id., ¶ 15.
7.  Id., Table 1, note (a).  See also id., ¶ 25.

to Professor Bessembinder, on the 60 days he analyzed, Mr. Oystacher "engaged in over six

thousand 'flips,' in each case canceling one or more orders ('cancel side' of flip) and virtually

simultaneously entering one or more opposite-direction orders that were most often priced to

immediately trigger trades ('trade side' of flip)."[8]  As described above, however, the CFTC

charges do not pertain to all of these flip events, but instead focus on a "narrowed set of orders

and flips" that includes fully displayed "cancel-side orders that were entered one second or less

before the flip, … where one or more orders were already on the limit order book at the order

price or a more aggressive price at the time the first cancel-side order was entered," and "where

Mr. Oystacher's quantity entered on the cancel side in the last second before the flip was at least

equal to the total quantity of unexecuted orders already in the limit order book at the 'event

price' or better."[9,10]

> 7.    Professor Bessembinder then reports various statistics that are purportedly:

> focused … on assessing which of two hypotheses regarding the orders entered on
> the cancel-side of Mr. Oystacher's flips is supported by the data.  The first
> hypothesis is that his cancel-side orders were entered in the normal course of
> business, with intent to seek trade executions, but that subsequent changes in
> information, circumstances or objectives led Mr. Oystacher to abruptly reverse his
> desired direction of trade [the "Not Spoofing Hypothesis"].  The second
> hypothesis is that his cancel-side orders were "spoof orders" that were entered
> without intent to execute trades [the "Spoofing Hypothesis"].[11]

---

8.  Id., ¶ 1.
9.  Id., ¶¶ 48-49.  In cases where all cancel-side orders share the same limit price, the "event price" is
    defined to be the common limit order price; in cases where the cancel-side orders were at more than
    one price, the "event price" is defined to be the least aggressive price (i.e., the lowest price for cancel-
    side buys, and the highest price for cancel-side sells) among the cancel-side orders.  Id., note 16.  In
    other words, the "event price" is the price of the trade-side order(s) in the flip event.
10. The narrowed set of orders and flips include the orders listed in Exhibit A of the complaint as well as
    orders in the E-Mini contract subsequent to January 2014 that meet the criteria described in the text.
    Id., ¶ 48; Plaintiff  U.S. Commodity Futures Trading Commission's Memorandum in Support of
    Motion for Preliminary Injunction, November 9, 2015 ("Plaintiff's Memo"), at 11-12.  Thus, the
    narrowed set of orders and flips does not include orders and trades in the April 2013 VIX contract on
    March 8, 13 and 14, 2013.
11. Bessembinder Report, ¶¶ 17-18.

Professor Bessembinder concludes that the data are "consistent … with the hypothesis that Mr. Oystacher entered orders on the cancel side of his flips not to generate trades, but rather as part of a spoofing strategy," particularly "with respect to the narrowed set of orders [and flips]."[12]

8.      Significantly, Professor Bessembinder's opinion that Mr. Oystacher acted "without intent to execute trades" is not based on any direct evidence of intent such as could be potentially found in a trading algorithm or written or oral admissions.  Rather, Professor Bessembinder purports to form an opinion about Mr. Oystacher's intent when he entered certain orders based on the characteristics and subsequent history of those orders.  Thus, Professor Bessembinder necessarily rejects, either explicitly or implicitly, other possible explanations for the characteristics and subsequent history of those orders including the normal business reasons for entering orders with particular attributes and the normal business reasons for cancelling orders including changes in market conditions, information learned from the reactions of other traders after the orders are placed, and information learned from developments in other markets.

9.      I have been asked by counsel for the Defendants to review and evaluate Professor Bessembinder's analysis and conclusions.[13]  In performing this assignment, I have received assistance from the professional staff of Compass Lexecon.  Appendix B identifies the materials we relied upon in compiling this report.  As a result of my work, I have concluded that Professor Bessembinder's analysis is fundamentally flawed and fails to establish that Mr. Oystacher acted "without intent to execute trades" as required by the Spoofing Hypothesis.  I further conclude that to the extent it is possible to infer intent when placing orders from the characteristics and subsequent history of those orders, the data are more consistent with the Not Spoofing Hypothesis than the Spoofing Hypothesis.  Among other things:

---

12. Id., ¶¶ 108.iii & 108.iv.
13. Compass Lexecon bills for my time at a rate of $1,250 per hour.  My compensation is not contingent on the outcome of this matter.

- Cancellations are common and a substantial fraction of cancellations occur within one second of order entry. Mr. Oystacher generally cancelled a lower percentage of his contracts than other traders, and the percentage of Mr. Oystacher's cancellations that occurred within one second of order entry is lower than the average of other traders for each of the relevant products. Therefore, the extent and speed of Mr. Oystacher's cancellations are consistent with the Not Spoofing Hypothesis.

- Flip events are common and other traders in the aggregate had substantially more flip events than Mr. Oystacher. Mr. Oystacher had more contracts cancelled in flip events than other traders only because Mr. Oystacher's orders were substantially larger than the orders of other traders, on average. Therefore, the frequency of Mr. Oystacher's flipping activity is consistent with the Not Spoofing Hypothesis.

- Professor Bessembinder's analysis of "Mr. Oystacher's order entry behavior in the seconds before his flips" is fundamentally flawed because Professor Bessembinder limited his analysis to the subset of Mr. Oystacher's orders that were placed just before flip events. In fact, the data show that Mr. Oystacher often placed large, imbalanced, aggressively-priced non-Iceberg orders but did not cancel these orders in flips within one second. This finding is contrary to Professor Bessembinder's conclusion that Mr. Oystacher entered his cancel-side orders with the "intent that they be canceled" but consistent with the Not Spoofing Hypothesis.

- The characteristics of Mr. Oystacher's orders are consistent with the Not Spoofing Hypothesis. In particular, it was reasonable for Mr. Oystacher to not use the Iceberg option when he wanted a passive order to have time priority over orders subsequently entered by other traders at the same price. It also was reasonable for Mr. Oystacher to enter marketable orders when he wanted to obtain certainty of execution, and to use the Iceberg option on such orders when he did not want other traders to observe the size of his orders. Moreover, the data show that Mr. Oystacher's non-flip orders include aggressively-priced non-Iceberg orders like his cancel-side orders, and marketable Iceberg orders like his trade-side orders. The data also show that Mr. Oystacher's cancel-side orders were not significantly larger, on average, than his non-flip orders.

- Mr. Oystacher's trade-side orders had relatively high execution rates as compared to his cancel-side orders because his trade-side orders were marketable orders and because Mr. Oystacher left his trade-side orders open for relatively long periods of time, on average. By leaving those orders open, Mr. Oystacher indicated not only that he was willing to execute additional trades at the event price, but that he believed he would be able to do so. Therefore, Mr. Oystacher's behavior is not consistent with the claim that Mr. Oystacher thought he needed to enter "spoof orders" in order to get his trade-side orders filled.

- Professor Bessembinder's analysis of changes in market conditions between the entry and cancellation of Mr. Oystacher's cancel-side orders is fundamentally flawed for many reasons. In particular, two of the three types of changes in market conditions that Professor Bessembinder considers would not necessarily be beneficial to a spoofing strategy. Moreover, the changes in market conditions that Professor Bessembinder incorrectly claims would be beneficial to a spoofing strategy did not always occur, and improvements in the cancel-side BBO, in particular, were infrequent. Professor Bessembinder also does not establish that Mr. Oystacher's cancel-side orders caused the changes in market conditions that he analyzes. Furthermore, Professor Bessembinder does not establish that Mr. Oystacher's decisions to place his trade-side orders were not attributable to either the changes in market conditions that he considered or other changes in market conditions that he ignored (and which occurred frequently), consistent with the Not Spoofing Hypothesis.

- As Professor Bessembinder recognizes, the relatively higher rate of Iceberg usage on Mr. Oystacher's cancel-side orders during the April/May 2015 period is inconsistent with the Spoofing Hypothesis. Moreover, contrary to Professor Bessembinder's claim, the higher rate of Iceberg usage was not offset by an increase in the average size of Mr. Oystacher's Iceberg orders. Furthermore, the average size of Mr. Oystacher's non-Iceberg cancel-side orders decreased over time. Finally, the relative size of Mr. Oystacher's cancel-side orders, as compared to other traders' orders displayed in the Market Data, declined over time. Therefore, Mr. Oystacher's order behavior in April/May 2015 is even less consistent with the Spoofing Hypothesis than his order behavior at earlier dates.

In short, Professor Bessembinder's analysis does not establish that Mr. Oystacher's cancel-side orders were "spoof orders" that were entered without intent to execute trades. I elaborate upon and provide the bases for these conclusions in the remainder of this report.

### III. "THE FREQUENCY OF MR. OYSTACHER'S FLIPPING ACTIVITY" IS CONSISTENT WITH THE NOT SPOOFING HYPOTHESIS

10. A limit order, as used for electronic trading on the relevant markets, is a request submitted to an exchange to buy or sell a specified quantity of a given futures contract at a given price or better that has been acknowledged by an exchange and entered into the exchange's order book.[14] The lowest limit price among sell orders in the book is referred to as the "best offer" or "best ask" and the highest limit price among buy orders in the order book is

---

14. Complaint, ¶ 21; Bessembinder Report, ¶ 8.

referred to as the "best bid."[15]  The difference between the best offer and the best bid is referred to as the "bid-ask spread" or "bid-offer spread."[16]  Market participants can subscribe to a real time data feed from the relevant exchanges that provides the Market Data, which is a continuous record of the aggregate number of orders and unexecuted quantities in the limit order book at the best bid and ask, as well as the next nine (four in the case of the VIX contract) price levels.[17]

11.     The electronic trading platforms employ pre-defined sets of trade rules to match buy orders to sell orders based on both time and price priority.[18]  A buy limit order can be executed only if it is matched with a sell order that provides a price equal to or lower than the limit price specified in the buy order, and a sell limit order can be executed only if it is matched with a buy order that provides a price equal to or higher than the limit price specified in the sell order.[19]  A "marketable order" is a limit order that is submitted at a price sufficiently aggressive that it executes immediately (in whole or in part) against opposite side orders.[20]

12.     An open order may be cancelled by the trader that placed the order at any time before it is completely executed.[21]  As Professor Bessembinder states, "[t]rading in modern electronic markets routinely involves the entry and cancellation of large numbers of orders."[22]  In fact, data from Bessembinder Report Table 1 shows that the other traders Professor Bessembinder analyzed cancelled most of their orders (measured by number of contracts):

---

15. Complaint, ¶ 24; Bessembinder Report, ¶ 10.
16. Complaint, ¶ 23; Bessembinder Report, ¶ 10.
17. Complaint, ¶¶ 20 & 23; Bessembinder Report, ¶ 15.
18. Complaint, ¶ 24.
19. Bessembinder Report, ¶ 8.
20. Id.  Thus, a marketable buy order is a limit order to buy at a price at or above the lowest offer in the order book, and a marketable sell order is a limit order to sell at a price at or below the price of the highest bid in the order book.
21. Id., ¶ 21.  A "Day" order expires at the end of the day unless previously executed or cancelled; a "Good-Till-Cancel" or "GTC" order remains active until it is completely executed, cancelled, or the underlying instrument expires; and a "Good-Till-Date" or "GTD" order remains active until it is completely executed, cancelled, expires at the specified date, or the underlying instrument expires.
22. Bessembinder Report, ¶ 16.

**Contracts Cancelled as a Percentage of Contracts Entered**

| Contract | Mr. Oystacher | | | All Other Traders with Flip Events, Excluding Mr. Oystacher | | |
|---|---|---|---|---|---|---|
| | Contracts Entered | Contracts Traded | Contracts Cancelled* (%) | Contracts Entered | Contracts Traded | Contracts Cancelled* (%) |
| Crude Oil | 121,003 | 35,736 | 70.5% | 4,422,464 | 425,000 | 90.4% |
| Copper | 324,869 | 52,258 | 83.9% | 2,012,971 | 237,987 | 88.2% |
| Natural Gas | 211,122 | 35,438 | 83.2% | 1,557,905 | 123,211 | 92.1% |
| VIX | 1,476,839 | 255,266 | 82.7% | 36,405,428 | 1,103,999 | 97.0% |
| E-Mini, 6/2013 | 738,228 | 270,516 | 63.4% | 39,292,926 | 4,058,251 | 89.7% |
| E-Mini, 12/2013 & 1/2014 | 5,670,054 | 2,104,580 | 62.9% | 35,715,817 | 10,435,661 | 70.8% |
| E-Mini, 9/2014 | 161,894 | 35,154 | 78.3% | 17,510,266 | 3,824,167 | 78.2% |
| E-Mini, 4/2015 & 5/2015 | 1,852,120 | 449,165 | 75.7% | 12,016,122 | 2,737,085 | 77.2% |

*Equals (Contracts Entered – Contracts Traded) as a percentage of Contracts Entered.

Source: Bessembinder Report, Table 1.

The table above also shows that, with the exception of the E-Mini contract in September 2014, Mr. Oystacher cancelled a smaller percentage of his orders than other traders, on average.

13.     It is also not unusual for orders to be cancelled within one second of entry. As the table below shows, the average percentage of order cancellations that occurred within one second ranges from 40% (for VIX) to 57% (for the E-Mini in April/May 2015) for traders other than Mr. Oystacher:

**Percent of Cancellations That Occurred Within One Second***

| Contract/Period | Mr. Oystacher | | | All Other Traders with Flip Events, Excluding Mr. Oystacher | | |
|---|---|---|---|---|---|---|
| | Orders Cancelled | Orders Cancelled Within One Second | Percent Cancelled Within One Second | Orders Cancelled | Orders Cancelled Within One Second | Percent Cancelled Within One Second |
| Crude Oil | 3,961 | 1,887 | 47.6% | 2,554,453 | 1,376,592 | 53.9% |
| Copper | 21,145 | 10,245 | 48.5% | 1,552,078 | 779,598 | 50.2% |
| Natural Gas | 10,464 | 3,901 | 37.3% | 604,240 | 254,179 | 42.1% |
| VIX | 10,674 | 1,742 | 16.3% | 1,765,378 | 699,284 | 39.6% |
| E-Mini, 6/2013 | 3,339 | 752 | 22.5% | 2,381,593 | 1,036,444 | 43.5% |
| E-Mini, 12/2013 & 1/2014 | 11,150 | 1,222 | 11.0% | 4,727,882 | 2,583,598 | 54.6% |
| E-Mini, 9/2014 | 582 | 101 | 17.4% | 2,032,792 | 1,017,603 | 50.1% |
| E-Mini, 4/2015 & 5/2015 | 4,901 | 544 | 11.1% | 2,202,956 | 1,257,507 | 57.1% |

* Orders cancelled do not include cancellations of orders entered on previous days.

The table also shows that Mr. Oystacher's percentage of order cancellations within one second is lower than average in each product, and ranges from 11% (for the E-Mini in two periods) to 48% (for Crude Oil and Copper).

14.     As noted above, Professor Bessembinder's analysis focuses on flip events. For each trader, Professor Bessembinder "computed total order entry measured in contracts, total contracts traded, the number of flip events, the quantity of contracts canceled on the cancel side of flips, the quantity of contracts entered on the trade side of flips, and the total contracts traded on the trade side of flips" and "computed each trader's ranking among all traders for each associated statistic."[23] Professor Bessembinder found that Mr. Oystacher ranked highest in the percentage of "overall trade executions" for "orders entered on the trade side of flips, in all markets and across all periods" and, "with the exception of the E-Mini S&P 500 during June 2013 … and September 2014," also ranked highest in contracts "canceled at flip."[24]

15.     Professor Bessembinder claims that "[t]he frequency and magnitude of Mr. Oystacher's flips, in combination with the high percentage of his completed trades

---

23. Id., ¶ 26.
24. Id., ¶ 27. See also id., Table 1.

attributable to flips, … indicate that flipping comprised an integral part of Mr. Oystacher's trading strategies, to an extent that was unrivaled by other traders …."[25]  However, while Mr. Oystacher ranked highest in the percentage of "overall trade executions for orders entered on the trade side of flips," not all trade executions for orders entered on the trade side of flips are "attributable to flips."  More specifically, trades executed on the trade side of flips include:  (i) trades executed against other traders' cancel-side orders that were in the book before the flipping trader's cancel-side order(s) were placed, (ii) trades executed against other traders' cancel-side orders that were placed after the flipping trader's cancel-side order(s) were placed and before they were cancelled, and (iii) trades executed against other traders' cancel-side orders placed after the flipping trader placed his trade-side order.  At most, only a portion of the trades in category (ii) can be fairly characterized as "attributable to flips" (because other traders might not have entered some or all of these cancel-side orders if the flipping trader had not placed his cancel-side orders).  The trades in categories (i) and (iii) are not attributable to flips because the flipping trader could have executed those trades without flipping (i.e., by entering the trade-side order without previously entering the cancel-side order(s)).[26]

 16.    Professor Bessembinder also claims that "[t]he frequency and magnitude of Mr. Oystacher's flips, in combination with the high percentage of his completed trades attributable to flips … cast doubt as to whether it is plausible that Mr. Oystacher's flips occurred in reaction to new information or changes in circumstances that arose after he entered his

---

25. Id., ¶ 35.
26. Professor Bessembinder's findings concerning relative flip frequencies and magnitudes also depend on the time interval between order cancellation and opposite side order entry used to identify flip events.  The 0.005 second interval he used identifies Mr. Oystacher's flip events because the "avoid orders that cross" functionality of the trading software that Mr. Oystacher used cancelled outstanding cancel-side orders that otherwise would have been crossed within 0.005 seconds of the placement of the trade-side orders.  See Complaint, ¶ 54; Bessembinder Report, note 8.  However, a 0.005 second interval excludes flips by other traders when those traders had a longer interval between order cancellation and the opposite-side order entry.

orders."[27]  The data do not support this conclusion for three reasons.  First, the data Professor

Bessembinder compiled demonstrate that flip events are common, as the table below shows.[28]

**Number of Flip Events by Mr. Oystacher and by Other Traders**

| Contract | Number of Other Traders with Flip Events | Number of Flip Events by Other Traders | Number of Flip Events by Mr. Oystacher | Number of Traders with More Flips than Mr. Oystacher |
|---|---|---|---|---|
| Crude Oil | 76 | 3,199 | 485 | 2 |
| Copper | 30 | 649 | 1,081 | 0 |
| Natural Gas | 48 | 1,831 | 920 | 0 |
| VIX | 60 | 4,123 | 943 | 0 |
| E-Mini, 6/2013 | 216 | 42,596 | 187 | 36 |
| E-Mini, 12/2013 & 1/2014 | 369 | 42,447 | 2,205 | 4 |
| E-Mini, 9/2014 | 154 | 23,626 | 57 | 68 |
| E-Mini, 4/2015 & 5/2015 | 197 | 38,251 | 570 | 24 |

Source:  Bessembinder Report, Table 1.

These data show that other traders collectively had substantially more flip events than Mr.

Oystacher and that there were individual traders that had more flip events than Mr. Oystacher in

the Crude Oil contract and the E-Mini contract (in all time periods).

17.     Second, the data show that Mr. Oystacher cancelled more contracts in flip

events than other traders because Mr. Oystacher's orders generally were for substantially more

contracts than the orders of other traders, not because Mr. Oystacher had more flip events.  As

the table below shows, Mr. Oystacher's cancelled orders were 10 to 125 times larger than the

cancelled orders of other traders, on average, depending on the product:

---

27. Id., ¶ 35.

28. These data also are inconsistent with Professor Bessembinder's assertion that "[f]lips attributable to dramatic but unforeseen changes in circumstances or objectives should be relatively infrequent."  See Bessembinder Report, ¶ 24.

**Average Contracts Cancelled Per Flip Event:**
**Mr. Oystacher and All Other Traders with Flip Events**

| Contract | Mr. Oystacher | All Other Traders | Ratio of Mr. Oystacher to Other Traders |
|---|---|---|---|
| Crude Oil | 83.31 | 2.31 | 36 |
| Copper | 77.20 | 5.94 | 13 |
| Natural Gas | 84.71 | 8.15 | 10 |
| VIX | 550.98 | 8.48 | 65 |
| E-Mini, 6/2013 | 489.77 | 47.00 | 10 |
| E-Mini, 12/2013 & 1/2014 | 757.96 | 9.12 | 83 |
| E-Mini, 9/2014 | 338.98 | 6.91 | 49 |
| E-Mini, 4/2015 & 5/2015 | 526.84 | 4.20 | 125 |

Source: Bessembinder Report, Table 1.

18.     Finally, neither the frequency of Mr. Oystacher's flip events nor the number of orders Mr. Oystacher cancelled in flip events provides any information about the reasons Mr. Oystacher placed or cancelled his cancel-side orders. Professor Bessembinder claims that "[e]ach flip represents a rather dramatic change in trading behavior" and asserts that "[f]lips attributable to dramatic but unforeseen changes in circumstances or objectives should be relatively infrequent."[29] However, Mr. Oystacher's cancel-side orders "in general were entered at prices close to the best bid or ask, and were often entered at prices matching the best bid or ask."[30] Mr. Oystacher's trade-side orders also were entered at prices close to the best bid or ask, as the average ticks to BBO on entry ranged from -0.99 ticks (for the VIX contract) to -1.66 ticks (for the Crude Oil contract).[31] Professor Bessembinder does not establish that changes in

---

29. Id., ¶ 24.
30. Id., ¶ 59. See also id., Table 4 (showing average ticks to BBO of 0 to 0.24 ticks for cancel-side orders in the "narrowed set of flip events" and average ticks to BBO of -0.06 to 0.27 for cancel-side orders in the set of "all flip events").
31. Id., Table 3B (column [16]). A tick is the minimum allowable price increment. Id., ¶ 8. One tick was approximately 0.01% of the price for contracts other than Natural Gas and the E-Mini in June 2013. One tick was approximately 0.03% of the price for Natural Gas and approximately 0.02% of the price for the E-Mini in June 2013.

circumstances sufficient to cause Mr. Oystacher to change his reservation prices by these relatively small amounts (i.e., less than 2 ticks) did not occur sufficiently frequently.

19.    For these reasons, the data concerning the frequency of flips does not allow one to determine whether Mr. Oystacher intended to cancel these orders when they were placed (consistent with the Spoofing Hypothesis), or whether changes in information, circumstances or objectives led Mr. Oystacher to reverse his desired direction of trade (consistent with the Not Spoofing Hypothesis).

20.    Furthermore, some of Mr. Oystacher's cancel-side orders were marketable orders that did not "execute completely when entered, remained on the limit order book for a period of time, and [were] subsequently cancelled as part of a later flip."[32]  Since Mr. Oystacher entered these cancel-side orders as marketable orders that were certain to execute at least in part, they could not have been "spoof orders" (i.e., orders that were not were not intended to execute at the time they were entered).  As the table below shows, the percentage of Mr. Oystacher's cancel-side orders that were marketable orders when entered ranges from 6.6% (for Natural Gas) to 17.8% (for the E-Mini in September 2014):

---

32. Id., note 21.

**Distribution of Mr. Oystacher's Cancel-Side Orders
By Price Type When Entered**

| Product | Number of Cancel-Side Orders | Percent Marketable | Percent Establishing New BBO |
|---|---|---|---|
| Crude Oil | 1,984 | 9.9% | 2.0% |
| Copper | 7,005 | 7.9% | 3.5% |
| Natural Gas | 5,109 | 6.6% | 3.6% |
| VIX | 5,345 | 10.2% | 0.2% |
| E-Mini, 6/2013 | 839 | 8.1% | 0.0% |
| E-Mini, 12/2013 & 1/2014 | 6,392 | 17.0% | 0.1% |
| E-Mini, 9/2014 | 118 | 17.8% | 0.0% |
| E-Mini, 4/2015 & 5/2015 | 1,668 | 11.4% | 0.4% |

In addition, the table shows that some of Mr. Oystacher's cancel-side orders were passive orders that established a new BBO. Orders that establish a new BBO are not "protected against execution by the presence of other orders in the limit order book at the same or better price" and therefore, provide a weaker indication of "spoofing intent" according to Professor Bessembinder.[33]

### IV. PROFESSOR BESSEMBINDER'S ANALYSIS OF "MR. OYSTACHER'S ORDER ENTRY BEHAVIOR IN THE SECONDS BEFORE HIS FLIPS" IS FUNDAMENTALLY FLAWED

21. Bessembinder Report, §V analyzes "whether Mr. Oystacher altered his order placements in advance of his flips."[34] In particular, Professor Bessembinder "measured for every order the elapsed time from order entry until Mr. Oystacher's next flip, . . . assigned each order to one of several 'buckets'" by seconds to next flip, and "distinguished between orders entered on the cancel side of the upcoming flip and orders entered on the opposite side."[35] Bessembinder Report, Table 2 reports "the total number of orders entered by Mr. Oystacher, the

---

33. Id., ¶ 51 (stating that "the indications of spoofing intent … are strongest" for aggressively priced orders). By definition, only orders that improve the BBO are passive but not protected.
34. Id., ¶ 39.
35. Id.

total number of contracts he entered on those orders, the number of orders he entered per second, the number of contracts he entered per second, and his rate of Iceberg usage."[36]  Professor Bessembinder claims that his analysis produces three "key findings":

> First, Mr. Oystacher on average accelerated his rate of contract entry on the cancel side in the seconds prior to the flip, and particularly so in the last second. Second, Mr. Oystacher on average entered more orders for more contracts on the cancel side as compared to the opposite side in the seconds before his flips. Third, in the Crude Oil, Copper, Natural Gas and June 2013 E-Mini S&P 500 contracts, Mr. Oystacher strongly reduced his rate of Iceberg usage on the cancel side, particularly in the last second before his flip.[37]

Professor Bessembinder then argues that "[i]t is implausible that unexpected events or changes in circumstances that occurred after order entry would give rise to these patterns at the time of order entry in any of the markets" or "that such patterns in his order entry behavior would arise consistently across time and markets for innocuous reasons" and claims that "these patterns are strongly consistent with the hypothesis that the orders were entered by Mr. Oystacher with the intent that they be canceled, but only after other traders observed a sudden, large and growing imbalance in the Market Data."[38]

22.     This portion of Professor Bessembinder's analysis is fundamentally flawed because Professor Bessembinder limited his analysis to the subset of Mr. Oystacher's orders that were placed immediately prior to flip events, and did not consider whether or how frequently Mr. Oystacher placed other orders that had the same characteristics without flipping shortly thereafter.  As is demonstrated below, Mr. Oystacher often placed large, aggressively-priced displayed orders on one side of the market but did <u>not</u> cancel these orders in flips within one second.  This finding implies that Mr. Oystacher did have "innocuous reasons" for placing orders with these

---

36. <u>Id.</u>, ¶40.
37. <u>Id.</u>, ¶ 41.
38. <u>Id.</u>, ¶ 46.

characteristics, and is consistent with the hypothesis that when Mr. Oystacher cancelled orders with these characteristics quickly, he did so because "unexpected events or changes in circumstances … occurred after order entry" (i.e., the Not Spoofing Hypothesis).

23.     To perform our analysis, we analyzed Mr. Oystacher's orders in each second that he placed orders for each of the relevant products.  For each second and product, we identified the side of the market with larger orders.  We then identified the subset of seconds in which (a) at least some of those orders were priced aggressively (i.e., at the BBO or better), and (b) none of those orders were Icebergs.  We then ranked that subset of seconds by order size and selected the largest order size quintile (i.e., the largest 20%).  Through this process, we identified the seconds in which Mr. Oystacher placed his largest imbalanced, aggressively-priced non-Iceberg orders.  We then analyzed whether any of the orders in these seconds were cancelled in a flip within one second (i.e., in the second the orders were placed or in the next second).  The table below reports our findings regarding the frequency of any such flips:

**Flip Frequencies for Large, Imbalanced, Aggressively-Priced Non-Iceberg Orders**

| Product | Flip Frequency |
|---|---|
| Crude Oil | 68.1% |
| Copper | 45.0% |
| Natural Gas | 46.2% |
| VIX | 9.8% |
| E-Mini, 6/2013 | 21.6% |
| E-Mini, 12/2013 & 1/2014 | 20.2% |
| E-Mini, 9/2014 | 25.6% |
| E-Mini, 4/2015 & 5/2015 | 5.5% |

As the table shows, the flip frequencies for these large, imbalanced, aggressively-priced non-Iceberg orders range from 5.5 percent (for E-Mini April 2015 and May 2015) to 68.0

percent (for Crude Oil).  In other words, the frequency of <u>not</u> flipping ranged from 31.9

percent (for Crude Oil) to 94.5 percent (for E-Mini April 2015 and May 2015).  Thus,

Mr. Oystacher's trading activity after he entered large, imbalanced, aggressively-priced

non-Iceberg orders is not consistent with the hypothesis that "the orders were entered by

Mr. Oystacher with the intent that they be cancelled" as Professor Bessembinder claims.

## IV.   PROFESSER BESSEMBINDER'S ANALYSIS "CHARACTERIZING MR. OYSTACHER'S FLIP ACTIVITIES AND MARKET REACTIONS" IS FUNDAMENTALLY FLAWED

24.     Bessembinder Report, §VI reports "several statistics [purportedly]

intended to better illuminate the strategy followed by Mr. Oystacher as he completed his

flips and market outcomes near the time of his flips" and "focuses primarily on the

narrowed set of orders and flips …."[39]  The narrowed set of orders and flips contains a

total of 5,296 orders on the cancel side (excluding Icebergs) and 1,595 orders on the trade

side.[40]

**"The Narrowed Set of Events - Iceberg Usage"**

25.     As noted above, the charged set of orders does not include Iceberg

orders on the cancel-side.  However, Professor Bessembinder reports "some statistics

regarding Iceberg usage for orders that otherwise survive the narrowing criteria …."[41]

Professor Bessembinder states that:

> The data demonstrate a dramatic divergence in Mr. Oystacher's rate of
> Iceberg usage across the cancel and trade side of his flips.  With the
> exception of E-Mini S&P 500 during April and May of 2015, Mr.
> Oystacher rarely used Icebergs on the cancel sides of his flips, while in

---

39. Bessembinder Report, ¶ 48.
40. <u>Id.</u>, ¶ 50.
41. <u>Id.</u>, ¶ 49.

stark contrast he very often used Icebergs on the trade side of his flips in the CME markets.[42]

Professor Bessembinder claims that the low rate of Iceberg usage on the cancel side of orders in the narrowed set "is consistent with the reasoning that … [Mr. Oystacher] intended for his cancel-side orders to be visible so that they would contribute to the observed order imbalance and generate reactions by other traders."[43]

26.    Professor Bessembinder's analysis is incomplete for two reasons. First, because only the displayed portion of an order has time priority over displayed orders entered subsequently by other traders at the same price, a trader who wants his entire order to have time priority will not use the Iceberg option.  In fact, the data also show that most of Mr. Oystacher's "non-flip" orders were not Icebergs.[44]  Therefore, not using the Iceberg option is consistent with the Not Spoofing Hypothesis.  Second, because a fully displayed order has time priority, such orders are more likely to be executed than Iceberg orders.  In that respect, the use of fully displayed orders is not consistent with the Spoofing Hypothesis (because a trader engaged in a spoofing strategy does not want his "spoof orders" to be executed).

27.    Professor Bessembinder also claims that the higher rate of Iceberg usage on Mr. Oystacher's trade-side orders "is consistent with the reasoning that" Mr. Oystacher "intended for other traders to not observe the magnitude of his trade-side orders, to avoid causing market reactions that would be detrimental to his trade-side

---

42. Id., ¶ 54.

43. Id., ¶ 56.  See also id., ¶ 38 ("In general, a trader following a spoofing strategy wants other market participants to observe and react to the spoof orders. Hence, other things equal, traders engaged in a spoofing strategy … would be less likely to use the Iceberg option on their spoof orders.")

44. Id., ¶ 81 (excerpt from Table 4 showing that the percent of orders entered as Icebergs for non-flip orders ranges from 1.16% for the E-Mini in December 2013/January 2014 to 29.99% for the E-Mini in April 2015/May 2015).

executions, such as a reduction in the arrival rate of new opposite-side orders."[45]  But this reasoning is the well-understood normal business rationale for using Iceberg orders and, therefore, is consistent with the Not Spoofing Hypothesis.  Moreover, many of Mr. Oystacher's marketable non-flip orders were Iceberg orders, as the table below shows.[46]

**Iceberg Usage Rates for Mr. Oystacher's Marketable Non-Flip Orders**

| Product | Marketable Non-Flip Orders | | |
| --- | --- | --- | --- |
| | Total Orders | Iceberg Orders | Percent Iceberg |
| Crude Oil | 312 | 104 | 33.3% |
| Copper | 529 | 167 | 31.6% |
| Natural Gas | 427 | 148 | 34.7% |
| VIX | 391 | 0 | NM |
| E-Mini, 6/2013 | 246 | 46 | 18.7% |
| E-Mini, 12/2013 & 1/2014 | 1,340 | 31 | 2.3% |
| E-Mini, 9/2014 | 87 | 5 | 5.7% |
| E-Mini, 4/2015 & 5/2015 | 443 | 120 | 27.1% |

For both reasons, Mr. Oystacher's use of Icebergs when entering marketable trade-side orders is consistent with the Not Spoofing Hypothesis.

28.      Furthermore, Mr. Oystacher's rate of Iceberg usage on trade-side orders does not support the Spoofing Hypothesis because Mr. Oystacher's trade-side orders would have executed against any existing opposite-side orders in the order book at the event price or better even if Mr. Oystacher's had not used Iceberg orders on the trade side.  In fact, many of Mr. Oystacher trade-side orders were not Iceberg orders.[47] Of course, Mr. Oystacher's use of Iceberg orders on the trade side may have affected the behavior of other traders who placed orders after Mr. Oystacher placed his trade-side

---

45. Id., ¶ 56.
46. As noted before, Iceberg orders are not available for the VIX contract.  Therefore, the Iceberg percentage for the VIX contract is not meaningful.
47. Id., ¶ 53 (reporting Iceberg percentages ranging from 18.58% for E-Minis in December 2013/January 2014 to 96.6% for Crude Oil in the narrowed set of orders and flips).

orders, but those traders necessarily would have known that Mr. Oystacher's cancel-side orders had been cancelled as those cancellations were reported in the Market Data before Mr. Oystacher's trade-side orders were reported in the Market Data.

**"The Narrowed Set of Events -  Price Aggressiveness and Execution Rates"**

29.     Professor Bessembinder finds that "Mr. Oystacher's trade-side orders were priced very aggressively" as "[t]he average ticks-to-best on the trade side was negative in every market."[48]  But trade-side orders are "priced very aggressively" by definition, because a trade-side order is an order entered at the same price or a more aggressive price than the price of the cancel-side order(s) in a flip event.  Nevertheless, the pricing of Mr. Oystacher's trade-side orders is consistent with the Not Spoofing Hypothesis because traders routinely place marketable orders in the normal course of business to obtain certainty of execution.  For example, if there are 100 orders to sell at $10 or better in the order book, a marketable order to buy 100 or less contracts at $10 will be filled in its entirety, and a marketable order to buy more than 100 contracts will be at least partially filled (unless resting orders are cancelled before the marketable order arrives, or another marketable order arrives first).  Mr. Oystacher placed a large number of marketable non-flip orders, and these marketable non-flip orders were also priced very aggressively, on average, as the table below shows:

---

48. Id., ¶ 58.

**Number and Pricing of Mr. Oystacher's Marketable Non-Flip Orders**

| Product | Number of Orders | Average Ticks to BBO |
|---|---|---|
| Crude Oil | 312 | -1.40 |
| Copper | 529 | -1.86 |
| Natural Gas | 427 | -1.24 |
| VIX | 391 | -0.88 |
| E-Mini, 6/2013 | 246 | -1.02 |
| E-Mini, 12/2013 & 1/2014 | 1,340 | -1.01 |
| E-Mini, 9/2014 | 87 | -1.05 |
| E-Mini, 4/2015 & 5/2015 | 443 | -1.01 |

Thus, the aggressive pricing of Mr. Oystacher's trade-side orders is consistent with the Not Spoofing Hypothesis.

30. Professor Bessembinder also reports that "Mr. Oystacher's aggressive pricing on the trade side of his flips was associated with relatively high execution rates (contracts executed relative to contracts entered)."[49] However, these high execution rates are not surprising for several reasons. First, trade-side orders, by definition, are orders entered at the same price or a more aggressive price than the price of the cancel-side orders, which necessarily means that at least a portion of each trade-side order executed, whereas cancel-side orders in the narrowed set were priced less aggressively than marketable orders, at prices that did not ensure partial execution.[50] The execution rates for trade side orders also were higher because the trade side orders were open longer, on average.[51] Furthermore, as Professor Bessembinder concedes, "[i]t is to

---

49. Id., ¶ 60.
50. Bessembinder Report, Table 4 reports the average ticks to BBO at entry for cancel-side and trade-side orders and shows that cancel-side orders, on average, were priced above the BBO, whereas trade-side orders, on average, were priced well below the BBO.
51. Bessembinder Report, Table 4 reports average enter-to-cancel times for cancel-side and trade-side orders and shows that the average enter-to-cancel time for trade-side orders was significantly longer than the average enter-to-cancel time for cancel-side orders. This is particularly true in the narrowed set of orders and flips, which excludes cancel-side orders that were open for more than one second.

be expected that execution rates would be lower for Mr. Oystacher's cancel-side orders, since by definition these orders could not have been executed fully."[52] Thus, the relatively high execution rates for Mr. Oystacher's trade-side orders are consistent with the Not Spoofing Hypothesis.

31.    Professor Bessembinder's finding that Mr. Oystacher's trade-side orders had relatively long enter-to-cancel times is also inconsistent with the Spoofing Hypothesis. If Mr. Oystacher entered the trade-side orders solely for the purpose of taking advantage of traders who entered cancel-side orders between the time Mr. Oystacher entered his cancel-side orders and the time Mr. Oystacher cancelled those orders, then Mr. Oystacher would have cancelled his trade-side orders immediately after he entered them. By leaving those orders open, Mr. Oystacher indicated not only that he was willing to execute additional trades at the event price, but also that he believed he would be able to obtain additional fills if he left those orders open. In other words, Mr. Oystacher's behavior is not consistent with the claim that Mr. Oystacher thought he needed to enter "spoof orders" in order to get his trade-side orders filled.

**"The Narrowed Set of Events - The Quantity of Order Entry on the Cancel Side"**

32.    Professor Bessembinder also reports that "Mr. Oystacher's cancel-side order entries were very large relative to the existing limit order book quantities, and relative to the minimum specified by the narrowing criterion."[53] However, the data show that the average size of Mr. Oystacher's cancel-side flip orders was not significantly greater than the average size of Mr. Oystacher's non-flip orders.[54] In fact, for the VIX

---

52. Id., ¶ 60
53. Id., ¶ 63.
54. Id. Table 4, rows [1], [8], [15], [22], [29], [36], [43] and [50] (for order size, compare column [6] with column [1]; for p values, see column [7]). The average size of Mr. Oystacher's cancel-side flip orders in the "narrowed set of orders and flips" somewhat larger but this is not meaningful because the

contract, the E-Mini contract in June 2013, and the E-Mini contract in April/May 2015, the average size of Mr. Oystacher's non-flip orders was significantly <u>larger</u> than the average size of his cancel-side flip orders.[55]  Therefore, the size of Mr. Oystacher's cancel-side orders is consistent with the Not Spoofing Hypothesis.

**"The Narrowed Set of Events:  Imbalance in Mr. Oystacher's Trading Interest"**

33.    Professor Bessembinder also "assessed the extent to which Mr. Oystacher's personal trading interest was unbalanced, in the sense that he had more unexecuted orders on the cancel vs. the opposite side, as of the time he engaged in flips."[56]  Professor Bessembinder finds that "[t]he average imbalance is always positive, indicating that Mr. Oystacher ha[d] more unexecuted orders on the cancel side than on the trade side."[57]  Professor Bessembinder claims that this finding is "relevant because it "verif[ies] that Mr. Oystacher's sudden flips from displaying trading interest in one direction to trading in the opposite direction do not occur at times when his orders are balanced, but rather occur after he has skewed his standing orders heavily to the cancel side."[58]  However, the data show that, on average, Mr. Oystacher's order book also was skewed to the cancel side when he cancelled his non-flip orders and when he canceled his

---

(...continued)
    narrowed set only "includes only those flip events where Mr. Oystacher's quantity entered on the cancel side in the last second before the flip was at least equal to the total quantity of unexecuted orders already in the limit order book at the 'event price' or better."  <u>Id.</u>, ¶ 49.

55. <u>Id.</u> Table 4, row [22] (for order size, <u>compare</u> column [6] with column [1]; for p values, <u>see</u> column [7]).  The average size of Mr. Oystacher's trade-side orders was also larger than the average side of his cancel-side orders in each of the relevant products.  <u>Id.</u>

56. <u>Id.</u>, ¶ 65.  In particular, Professor Bessembinder "assessed, as of the millisecond before the first cancellation in each flip event, the degree of imbalance in Mr. Oystacher's unexecuted orders."  <u>Id.</u>, ¶ 66.

57. <u>Id.</u>, ¶ 67.  Professor Bessembinder measures the imbalance at cancellation as the difference between the quantity of unexecuted contracts on the cancel side and the quantity of unexecuted contracts on the opposite side, as a percentage of the total quantity of unexecuted contracts on both sides of the market.  <u>Id.</u>, ¶ 66.  Therefore, a positive percentage indicates that there were more unexecuted contracts on the cancel side than on the opposite side.

58. <u>Id.</u>, ¶ 68.

trade-side flip orders.[59]  In other words, Mr. Oystacher's order book typically was skewed.

34.     It is also important to recognize that a trader might place more orders on one side of the market than the other for normal business reasons.  For example, a trader might place more sell orders than buy orders, and place his sell orders at more aggressive prices if he thought that the market price was more likely to fall than rise (and vice versa).  A trader also might place more sell orders than buy orders if the trader wanted to reduce the size of a long position or increase the size of a short position, and a trader might place more buy orders than sell orders if he wanted to reduce the size of a short position or increase the size of a long position.  Therefore, the imbalance in Mr. Oystacher's cancel side orders is consistent with the Not Spoofing Hypothesis.

**"The Narrowed Set of Events -  Changes in Market Conditions After Cancel Side Order Entry"**

35.     Professor Bessembinder also purports "[t]o assess whether Mr. Oystacher's cancel-side orders led, on average, to outcomes consistent with successful spoofing" by measuring "the change, from the millisecond before Mr. Oystacher's first cancel-side order is entered until the millisecond before his flip, in the BBO (best bid or offer), as well as in the count of orders and quantity of contracts on the public limit order book at the cancel-side order prices, or better … adjusted … for the effect of Mr. Oystacher's cancel-side orders."[60]  Professor Bessembinder found that there were "changes in market conditions between the entry and cancelation of Mr. Oystacher's cancel-side orders that would, on average, be beneficial to the orders he entered on the trade side of his flips."[61]  Based on those "on average" findings,

---

59. Id., Table 4.
60. Id., ¶ 69.
61. Id., ¶ 71.  Professor Bessembinder also found that the average changes in market conditions were statistically significant "for most markets and periods."  Id.

Professor Bessembinder "conclude[d] that the data is consistent with the theory that Mr. Oystacher's cancel-side order entries led to changes in market conditions, including improvements in the BBO price and/or larger contract quantities in the limit order book, which would on average benefit a spoofing strategy."[62]

36.     Professor Bessembinder's analysis of changes in market conditions between the entry and cancellation of Mr. Oystacher's cancel-side orders is fundamentally flawed for several reasons.  First, two of the three types of changes in market conditions that Professor Bessembinder considers would not necessarily be beneficial to a spoofing strategy.  In particular, an increase in the number of orders at the event price or better, by itself (i.e., without an increase in the number of contracts offered at the event price or better, or an improvement in the cancel-side BBO), would not be beneficial to a spoofing strategy because an increase in the number of orders by itself would not allow the spoofing trader to execute his trade-side orders at a better price or for a larger quantity.  Moreover, Professor Bessembinder analyzes changes in the <u>displayed</u> quantity of contracts at the event price or better, but in the absence of an improvement in the cancel-side BBO, the success of a spoofing strategy would depend on whether there was an increase in the <u>total</u> quantity of orders at the event price or better, not the displayed quantity.

37.     Second, the changes in market conditions that Professor Bessembinder incorrectly claims would be beneficial to a spoofing strategy did <u>not</u> always occur, as the table below demonstrates:

---

62. <u>Id.</u>, ¶ 75.

**Frequency of Changes in Market Conditions Analyzed by**
**Professor Bessembinder in the Narrowed Set of Orders and Flips**

| Product | Improvement in Cancel-Side BBO | Increase in Number of Cancel-Side Orders at the Event Price or Better | Increase in Quantity of Cancel-Side Contracts at the Event Price or Better | [1], [2] or [3] |
|---|---|---|---|---|
| | [1] | [2] | [3] | [4] |
| Crude Oil | 22.8% | 75.6% | 80.2% | 83.0% |
| Copper | 12.5% | 66.7% | 72.2% | 75.7% |
| Natural Gas | 15.5% | 69.7% | 68.2% | 71.2% |
| VIX | 0.0% | 78.3% | 93.5% | 93.5% |
| E-Mini, 6/2013 | 0.0% | 91.5% | 89.8% | 93.2% |
| E-Mini, 12/2013 & 1/2014 | 0.0% | 92.9% | 89.4% | 94.7% |
| E-Mini, 9/2014 | 0.0% | 87.5% | 68.8% | 87.5% |
| E-Mini, 4/2015 & 5/2015 | 4.2% | 95.8% | 87.5% | 95.8% |

As the table shows, improvements in the cancel-side best bid or offer did not occur often:  the frequencies ranged from 0% (for the VIX and E-Mini in all but one time period) to 22.8% (for Crude Oil.  The frequency of increases in the number of cancel-side orders at the event price or better ranged from 66.7% (for Copper) to 95.8% (for the E-Mini in April/May 2015); and the frequency of increases in the displayed quantity of cancel-side contracts at the event price or better ranged from 68.2% (for Natural Gas) to 93.5% (for VIX).  The frequency of at least one of these three changes in market conditions occurring ranged from 71.2% (for Natural Gas) to 95.8% (for the E-Mini in April/May 2015).

38.     Third, the fact that certain changes in market conditions occurred after Mr. Oystacher's orders were placed does not establish Mr. Oystacher's cancel-side orders "led to [these] changes in market conditions" as Professor Bessembinder claims.  Some or all of these changes in market conditions might have occurred even if Mr. Oystacher had not entered his cancel-side orders.

39.     Fourth, the changes in market conditions that Professor Bessembinder analyzes (by themselves or in combination with other facts and circumstances) are also

consistent with the Not Spoofing Hypothesis because they are "subsequent changes in information, circumstances or objectives" that might have led Mr. Oystacher to place his trade-side orders, which resulted in the cancellation of his cancel-side orders.

40. Fifth, Professor Bessembinder did not consider whether there were other changes in market conditions between the entry and cancellation of Mr. Oystacher's cancel-side orders that would be consistent with the Not Spoofing Hypothesis. The table below provides data showing the frequency of several other potentially relevant changes in market conditions that occurred during the relevant periods including (i) deterioration in the cancel-side BBO (i.e., an increase in the best offer when the cancel-side orders are sell orders, or a reduction in the best bid when the cancel-side orders are buy orders); (ii) a decrease in the quantity of cancel-side contracts offered by others at the BBO, (iii) the execution of a trade at the cancel-side BBO (or better); (iv) an improvement in the trade-side BBO; (v) an increase in trade-side contracts offered by others; (vi) the execution of a trade at the trade-side BBO (or better).[63] As the table below shows, the frequency of at least one of these changes in market conditions occurring ranged from 31.5% (for VIX) to 92.9% (for Crude Oil):

---

63. Note that both (i) and (ii) are changes in market conditions that would be detrimental to the trade-side of flips and are therefore inconsistent with a successful spoofing strategy.

**Frequency of Changes in Market Conditions Consistent with the Not-Spoofing Hypothesis**

| Product | Deterioration in the Cancel-Side BBO | Decrease in Quantity of Cancel-Side Contracts at the BBO | Execution of an Order at the Cancel-Side BBO | Improvement in the Trade-Side BBO | Increase in Quantity of Trade-Side Contracts at the BBO | Execution of an Order at the Trade-Side BBO | At Least One of [1] - [6] |
|---|---|---|---|---|---|---|---|
| | [1] | [2] | [3] | [4] | [5] | [6] | [7] |
| Crude Oil | 1.2% | 16.7% | 87.3% | 2.5% | 53.1% | 78.1% | 92.9% |
| Copper | 1.4% | 15.6% | 69.4% | 4.5% | 54.9% | 64.2% | 88.5% |
| Natural Gas | 1.2% | 15.5% | 57.6% | 1.5% | 30.0% | 43.0% | 76.1% |
| VIX | 0.0% | 4.3% | 8.7% | 0.0% | 13.0% | 12.0% | 31.5% |
| E-Mini, 6/2013 | 0.0% | 8.5% | 76.3% | 0.0% | 8.5% | 62.7% | 91.5% |
| E-Mini, 12/2013 & 1/2014 | 0.0% | 10.2% | 31.9% | 0.0% | 6.6% | 54.0% | 66.4% |
| E-Mini, 9/2014 | 0.0% | 31.3% | 25.0% | 0.0% | 12.5% | 37.5% | 62.5% |
| E-Mini, 4/2015 & 5/2015 | 0.0% | 12.5% | 41.7% | 0.0% | 25.0% | 66.7% | 83.3% |

Of course, these are just a subset of the changes in market conditions that may have provided Mr. Oystacher with a normal business reason for flipping.[64]

41.     Professor Bessembinder states that "[t]he question that arises [from the fact that cancellations occurred with one second in the narrowed set] is whether it is plausible that changes in information, circumstances or objectives that led Mr. Oystacher to abruptly change his desired direction of trade could have arisen so often and been acted on so quickly, on a consistent basis across markets and time periods," but never answers this question.[65]  However the data presented above show that there frequently were changes in market conditions between the time that Mr. Oystacher entered his cancel-side orders and the time he entered his trade-side orders, which could have led Mr. Oystacher to change his desired direction of trade at the relevant prices.

---

64. For example, Mr. Oystacher might have placed his trade-side orders because of price movements he observed in correlated markets after his cancel-side orders were placed or because the failure of his cancel-side orders to execute was informative in light of the relevant facts and circumstances at the time these orders were placed.

65. Id., ¶ 85.

## V.     PROFESSER BESSEMBINDER'S ANALYSIS "COMPARING MR. OYSTACHER'S FLIP ORDERS TO HIS NON-FLIP ORDERS" IS FUNDAMENTALLY FLAWED

42.     Bessembinder Report, Table 4 "report[s] averages computed across the orders that were on the cancel side of Mr. Oystacher's flips, the orders on the enter side of his flips, and his orders that were not involved in his flips" for the following variables:  "total order size at submission, the percentage of orders that used the Iceberg option, the number of ticks-to-best at entry, the percentage of orders that established a new best bid or offer…, the percent of the order size that was executed," and "[f]or those orders that were canceled , … the elapsed time from enter to cancel and the percentage cancel-side imbalance in Mr. Oystacher's personal unexecuted orders as of the cancelation time."[66]  Professor Bessembinder also "conducted formal statistical tests" to "evaluate[] the hypothesis that the average computed for flip orders is the same as the corresponding average computed for his orders that were not involved in flips."[67]  As I demonstrate below, Professor Bessembinder's findings are consistent with the Not Spoofing Hypothesis.

**Trade-Side Orders**

43.     Professor Bessembinder finds that Mr. Oystacher's trade-side orders "were on average larger than his non-flip orders," "were much more likely to be Icebergs as compared to his non-flip orders," "were on average priced more aggressively than his non-flip orders," and had higher execution rates "as compared to his non-flip orders."[68]  But, as explained above, Mr. Oystacher's trade-side orders were marketable orders, which by definition are priced very aggressively and virtually assured of partial execution.  In contrast, Mr. Oystacher's non-flip orders include marketable orders, aggressively-priced but non-marketable orders, and less

---

66. Id., ¶ 78.
67. Id., ¶ 79.
68. Id., ¶¶ 80-83.

aggressively-priced passive orders. Therefore, it is not surprising that Mr. Oystacher's non-flip orders were less aggressively priced and had lower execution rates, on average.

44. A more relevant comparison, therefore, is between the pricing of Mr. Oystacher's <u>marketable</u> non-flip orders and the pricing of Mr. Oystacher's trade-side orders, as shown in the table below:

| | | **Trade-Side of Flip Events** | |
| | **Marketable Non-Flip Orders** | | |
| **Product** | | **Narrowed Set** | **All Flips** |
| Crude Oil | -1.40 | -1.71 | -1.66 |
| Copper | -1.86 | -1.61 | -1.41 |
| Natural Gas | -1.24 | -1.38 | -1.27 |
| VIX | -0.88 | -0.98 | -0.99 |
| E-Mini, 6/2013 | -1.02 | -1.00 | -1.02 |
| E-Mini, 12/2013 & 1/2014 | -1.01 | -1.01 | -1.01 |
| E-Mini, 9/2014 | -1.05 | -1.00 | -1.00 |
| E-Mini, 4/2015 & 5/2015 | -1.01 | -1.04 | -1.05 |

**Mr. Oystacher's Marketable Non-Flip Orders and Trade-Side Orders Average Ticks to BBO At Entry**

As the table shows, the average ticks to BBO at entry for Mr. Oystacher's marketable non-flip orders is approximately the same as the average ticks to BBO at entry for Mr. Oystacher's trade-side orders. Therefore, the pricing of Mr. Oystacher's trade-side orders is consistent with the Not Spoofing Hypothesis.

45. The table below compares the execution rates for Mr. Oystacher's marketable non-flip orders and his trade-side orders:

**Execution Rates for Mr. Oystacher's
Marketable Non-Flip Orders and Trade-Side Flip Orders**

| Product | Marketable Non-Flip Orders | Trade-Side Flip Orders | |
|---|---|---|---|
| | | Narrowed Set | All Flips |
| Crude Oil | 89.0% | 69.8% | 69.1% |
| Copper | 74.3% | 43.3% | 43.5% |
| Natural Gas | 83.0% | 58.9% | 50.4% |
| VIX | 83.0% | 38.7% | 54.5% |
| E-Mini, 6/2013 | 89.1% | 55.2% | 65.2% |
| E-Mini, 12/2013 & 1/2014 | 91.7% | 69.4% | 68.3% |
| E-Mini, 9/2014 | 94.8% | 64.4% | 70.5% |
| E-Mini, 4/2015 & 5/2015 | 87.5% | 50.2% | 63.5% |

As the table shows, the execution rates of Mr. Oystacher's marketable non-flip orders were <u>higher</u> than the execution rates of Mr. Oystacher's trade-side orders. Therefore, the execution rates of Mr. Oystacher's trade-side orders are consistent with the Not Spoofing Hypothesis.

46. Professor Bessembinder states "[t]he large order sizes, aggressive prices, high rate of Iceberg usage, and high execution rates on the trade side are all consistent with a genuine desire to execute trades on favorable terms in the opposite direction as the cancel-side orders."[69] But a "genuine desire to execute trades" is also consistent with the Not Spoofing Hypothesis. The relevant question is not whether Mr. Oystacher intended his trade-side orders to execute, but whether Mr. Oystacher placed his cancel-side orders with the intent to cancel those orders before execution. Such intent cannot be inferred from Professor Bessembinder's analysis of the characteristics of Mr. Oystacher's trade-side orders.

---

69. Id., ¶ 88.

**Cancel-Side Orders**

47.     Professor Bessembinder finds that Mr. Oystacher's cancel-side orders "were much less likely to be Icebergs" than his non-flip orders.[70]  However, Professor Bessembinder's calculations show that most of Mr. Oystacher's non-flip orders were not Icebergs, with Iceberg percentages ranging from 1.16 (for the E-Mini in December 2013/January 2014) to 29.99 (for the E-Mini in April/May 2015).[71]  Moreover, Mr. Oystacher's non-flip orders include marketable orders, aggressively priced but non-marketable orders (i.e., passive orders priced at the BBO or better), and less aggressively-priced passive orders, whereas his cancel-side orders were primarily aggressively-priced but non-marketable orders.  As the table below shows, Mr. Oystacher's aggressively-priced but non-marketable non-flip orders had even lower Iceberg percentages, ranging from 1.0% (for the E-Mini in December 2013/January 2014) to 19.2% (for the E-Mini in April/June 2015):

<table>
<tr><td colspan="4" align="center"><b>Mr. Oystacher's Aggressively-Priced<br>Non-Marketable Non-Flip Orders<br>Iceberg Usage</b></td></tr>
<tr><td></td><td colspan="3" align="center"><b>Aggressively-Priced Non-Marketable Non-Flip Orders</b></td></tr>
<tr><td><b>Product</b></td><td align="center"><b>Total Orders</b></td><td align="center"><b>Iceberg Orders</b></td><td align="center"><b>Percent Iceberg</b></td></tr>
<tr><td>Crude Oil</td><td align="center">1,055</td><td align="center">171</td><td align="center">16.2%</td></tr>
<tr><td>Copper</td><td align="center">10,283</td><td align="center">1,783</td><td align="center">17.3%</td></tr>
<tr><td>Natural Gas</td><td align="center">2,521</td><td align="center">183</td><td align="center">7.3%</td></tr>
<tr><td>VIX</td><td align="center">3,327</td><td align="center">0</td><td align="center">NM</td></tr>
<tr><td>E-Mini, 6/2013</td><td align="center">1,587</td><td align="center">88</td><td align="center">5.5%</td></tr>
<tr><td>E-Mini, 12/2013 & 1/2014</td><td align="center">4,835</td><td align="center">48</td><td align="center">1.0%</td></tr>
<tr><td>E-Mini, 9/2014</td><td align="center">332</td><td align="center">22</td><td align="center">6.6%</td></tr>
<tr><td>E-Mini, 4/2015 & 5/2015</td><td align="center">2,129</td><td align="center">408</td><td align="center">19.2%</td></tr>
</table>

Therefore, Mr. Oystacher's use of fully displayed orders on the cancel side is consistent with the Not Spoofing Hypothesis.

---

70. Id., ¶¶ 81.

71. Id., (Table 4, column [1], rows [2], [9], [16], [23], [30], [37], [44], and [51]).

48.     Professor Bessembinder also finds that "the average enter-to-cancel time was much shorter for Mr. Oystacher's cancel-side orders relative to his non-flip orders, in all markets."[72]  While Professor Bessembinder recognizes that "this result arises in the narrowed set due to the criterion that cancelation occur within one second of entry," Professor Bessembinder finds that this result "is also observed for the full set of flips" and asserts that this latter finding is "strongly consistent with a systematic pattern of spoofing conduct."[73]  However the systematic differences in entry-to-cancellation times of cancel-side orders and non-flip orders are also consistent with the Not Spoofing Hypothesis.  To see why, recall that Mr. Oystacher's cancel-side orders were generally aggressively-priced orders at the current best bid or offer.  Consider for example, an offer to sell at the best offer of $10.  The market price would generally fluctuate after any such order is placed.  If the market price increased after the order was placed (or market conditions changed in such a way that Mr. Oystacher expected the market price to increase), Mr. Oystacher might enter an order to buy at $10 or better, causing the cancellation of the cancel-side order at $10.  Therefore, the set of cancel-side orders would include these relatively quick cancellations.  However, if the market price declined after the order was placed, then the original $10 sell order would remain open until it was subsequently cancelled or filled.  While some subsequent cancellations might occur in flip events after subsequent price reversals, others would be outright cancellations that are included in the set of cancelled non-flip orders.  As a result of this process, the average entry-to-cancel time would be shorter for cancel-side orders than for non-flip orders.

49.     Professor Bessembinder also states that "Mr. Oystacher's personal unexecuted orders measured in contracts were more imbalanced (with more contracts on the side

---

72. Id., ¶ 84.
73. Id., ¶¶ 84 & 88.

about to be canceled) at the time he canceled orders on the cancel-side of his flips as compared to times when he canceled his non-flip orders."[74]  However, Professor Bessembinder's calculations show that Mr. Oystacher's order book was also imbalanced when he cancelled non-flip orders, as the imbalance percentages for such orders range from 19.36 (for the E-Mini in December 2013/January 2014) to 55.39 (for the E-Mini in June 2013).[75]  Moreover, because non-flip orders have longer entry-to-cancel times than cancel-side orders, there is no reason to expect that the order imbalances at cancellation necessarily would be the same for cancel-side orders and non-flip orders under the Not Spoofing Hypothesis.  Therefore, Mr. Oystacher's order book imbalances are consistent with the Not Spoofing Hypothesis.

50.     Professor Bessembinder argues that "the quick cancellation times, low rate of Iceberg usage, and large buy vs. sell imbalances on the cancel side are all consistent with a desire to induce others to enter orders on the same side, while avoiding execution."[76]  However, for the reasons discussed above, these characteristics of Mr. Oystacher's cancel-side orders are also consistent with the Not Spoofing Hypothesis.

## VI.    MR. OYSTACHER'S "BEHAVIOR IN THE E-MINI S&P 500 MARKET OVER TIME" IS CONSISTENT WITH THE NOT SPOOFING HYPOTHESIS

51.     In §VIII of his report, Professor Bessembinder compares various statistics for the E-Mini S&P 500 contract across time, and concludes "that Mr. Oystacher's pattern of flipping conduct has remained largely unchanged" except that "Mr. Oystacher substantially increased his *rate* of Iceberg usage during the April/May 2015 period, a strategy change that, other things equal, would have reduced the effect of his cancel-side orders on the imbalance

---

74.  Id., ¶ 86.
75.  Id., Table 4 (column [1], rows [6], [13], [20], [27], [34], [41], [48], and [55]).
76.  Id., ¶ 88.

observed by others in the Market Data."[77]  However, Professor Bessembinder finds that Mr.

Oystacher "also increased the average *size* of his orders to such a degree that the cancel-side

order size that he displayed in the Market Data actually increased over time, despite the higher

rate of Iceberg usage."[78]  Based on this, Professor Bessembinder concludes that "despite

cosmetic changes in the *percentage* of orders where he used the Iceberg option, Mr. Oystacher's

overall strategy surrounding flips has been fundamentally unchanged, and remains highly

consistent with the reasoning that he regularly engages in spoofing, from June 2013 through the

most recent examined dates drawn from April and May of 2015."[79]

       52.    Professor Bessembinder's analysis of Mr. Oystacher's behavior in the E-

Mini contract over time is fundamentally flawed for several reasons.  First, the average displayed

size of Mr. Oystacher's non-flip Iceberg orders also increased from June 2013 to April/May

2015, and the magnitude of this increase was comparable to the increased average displayed size

of Mr. Oystacher's cancel-side Iceberg orders.[80]  Therefore, the increase in the average displayed

size of Mr. Oystacher's cancel-side Iceberg orders is consistent with the Not Spoofing

Hypothesis.

       53.    Second, contrary to Professor Bessembinder's claim, the increase in the

average displayed size of Mr. Oystacher's cancel-side Iceberg orders is primarily attributable to

an increase in the average portion of these Iceberg orders that was displayed, not an increase in

the average size of Mr. Oystacher's cancel-side Iceberg orders.  In particular, the average portion

of cancel-side Iceberg orders that was displayed increased from 10.33% in June 2013 to 30.87%

---

77. Id., ¶ 96.
78. Id., ¶ 96.
79. Id., ¶ 97.
80. Id., Table 5 (column [4]).  The average displayed size of Mr. Oystacher's non-flip Iceberg orders
    increased from 57.59 in June 2013 to 220.18 in April/May 2015, a 282 percent increase.  Similarly,
    the average displayed size of Mr. Oystacher's cancel side Iceberg orders increased from 57.90 in June
    2013 to 223.43 in April/May 2015, a 286 percent increase.

in April/May 2015 – a 199% increase.[81]  In contrast, the average size of Mr. Oystacher's cancel-side Iceberg orders increased by only about 29% during this period.[82]  Moreover, the increase in the average portion of Mr. Oystacher's cancel-side Iceberg orders that was displayed is consistent with the Not Spoofing Hypothesis because the average portion of Mr. Oystacher's non-flip Iceberg orders that was displayed increased by even more during this period, from 7.87% in June 2013 to 29.93% in April/May 2015 – a 280% increase.

54.     Third, the average size of Mr. Oystacher's non-Iceberg cancel-side orders declined from an average of 98.49 contracts in June 2013 to an average of 64.76 contracts in April/May 2015 – a 34% decline.[83]  The reduction in order size does not support the Spoofing Hypothesis, but is consistent with the Not Spoofing Hypothesis because the average size of Mr. Oystacher's non-flip non-Iceberg orders also declined during this period, from 106.60 in June 2013 to 59.97 in April/May 2015 – a 44% decline.[84]

55.     Finally, the ratio of Mr. Oystacher's "cancel-side enter quantity to the market book quantity at the 'event price' or better" declined from 7.32 in June 2013 to 3.91 in Apr/May 2015, even though the average size of Mr. Oystacher's cancel-side orders increased by approximately 82% during this period.[85]  This indicates that Mr. Oystacher's cancel-side order size declined relative to the size of other orders in the order book during the period from June

---

81. Compare id., Table 5, column [4] with id., Table 5, column [5] to derive the average percentage of cancel-side Iceberg orders displayed.

82. Id., Table 5, column [5] (reporting the average total size of cancel side Iceberg orders to be 560.67 in June 2013 and 723.79 in April/May 2015).

83. Id., Table 5 (column [6], rows [2] & [14]).

84. Id., Table 5 (column [6], rows [1] & [13]).

85. Id., Table 3B (column [10], rows [18] & [30], reporting ratios) & Table 4 (column [6], rows [29] & [50], reporting average order sizes of 110.58 and 201.16 contracts, respectively).  The "ratio of Mr. Oystacher's cancel-side enter quantity to the market book quantity at the 'event price' or better" is the ratio of "the quantity of contracts entered by Mr. Oystacher on the cancel side" to "the quantity of contracts in the limit order book on the cancel side at the event price or more aggressive prices, just before the entry of Mr. Oystacher's first cancel-side order."  Id., ¶ 62.

2013 to Apr/May 2015.[86]  The reduction in relative order size does not support the Spoofing Hypothesis.

56.     Thus, contrary to Professor Bessembinder's claim, certain aspects of Mr. Oystacher's order activity did change from June 2013 to April/May 2015.  As a result, Mr. Oystacher's order behavior in April/May 2015 is even more consistent with the Not Spoofing Hypothesis and less consistent with the Spoofing Hypothesis than his order behavior at earlier dates.

---

86. With respect to the narrowed set of orders and flips, Professor Bessembinder's calculations show that the ratio of Mr. Oystacher's cancel-side enter quantity to the market book quantity at the "event price" or better declined from 9.96 in June 2013 to 4.77 in Apr/May 2015 (a 52% decline), while the average size of Mr. Oystacher's cancel side orders decreased by approximately 39% during this period.  Id., Table 3A (column [9], rows [18] & [30], reporting ratios) & Table 4 (column [2], rows [29] and [50], reporting average order sizes of 175.86 and 107.77 contracts, respectively).  This also indicates that Mr. Oystacher's cancel size order size declined relative to the size of other orders in the order book during the period from June 2013 to Apr/May 2015.

Daniel R. Fischel

February 26, 2016

**DANIEL R. FISCHEL**                                              **February 2016**

Business Address:

Compass Lexecon
332 South Michigan Avenue
Chicago, Illinois  60604
Tel:  312-322-0209
dfischel@compasslexecon.com

## PROFESSIONAL EXPERIENCE

Lee and Brena Freeman Professor of Law and Business, University of Chicago Law School (7/89 – 12/2005, emeritus as of 1/1/2006); Dean of Law School (1/99 – 2/01); Professor of Law, University of Chicago Law School (1/84 - present); Visiting Professor of Law, University of Chicago Law School (7/82 - 6/83).

Professor of Law and Business, Northwestern University School of Law (1/1/2006 – 5/2011).

Professor, Kellogg School of Management (courtesy appointment, 1/1/2006 – 5/2011).

Jack N. Pritzker Distinguished Visiting Professor of Law, Northwestern University School of Law (6/02-6/03).

Professor of Law and Business, University of Chicago Graduate School of Business (7/87 - 6/90).

Director, Law and Economics Program, University of Chicago (1/84 - 6/91).

Assistant Professor of Law, Northwestern University School of Law (6/80 - 6/81); Associate Professor of Law, Northwestern University School of Law (6/81 - 6/82); promoted to full professor in 6/82.

Attorney with Levy and Erens, Chicago, Illinois (7/79 - 6/80).

Law Clerk for Associate Justice Potter Stewart of the United States Supreme Court (1978 - 1979).

Law Clerk for Judge Thomas E. Fairchild, Chief Judge of the Seventh Circuit Court of Appeals (1977 - 1978).

## CONSULTING EXPERIENCE

President and Chairman, Compass Lexecon (formerly Lexecon).

**AREAS OF SPECIALIZATION**

Corporate Finance, Corporate Control Transactions, Corporations, Financial Institutions, Regulation of Financial Markets, Regulation of Investments, Economic Analysis of Law.

**PUBLICATIONS**

Payback:  The Conspiracy to Destroy Michael Milken and His Financial Revolution, Harper Business (1995).

The Economic Structure of Corporate Law, Harvard University Press (1991) (with Frank H. Easterbrook).

**ARTICLES**

The Use of Trading Models to Estimate Aggregate Damages in Securities Fraud Litigation:  An Update, Briefly… Perspectives on Legislation, Regulation, and Litigation, Vol. 10, No. 3 (National Legal Center for the Public Interest, 2006) (with David J. Ross and Michael A. Keable).

The Hewlett-Packard Merger: A Case Study, in The New Investor Relations, Expert Perspectives on The State Of The Art (Bloomberg Press Princeton, 2004) (with Kenneth R. Cone, Gregory J. Pelnar and David J. Ross).

Market Evidence in Corporate Law, 69 U. Chi. L. Rev. 941 (2002).

Multidisciplinary Practice, The Business Lawyer, Vol. 55, (May 2000).

Government Liability for Breach of Contract, American L. & Econ. Rev. V1 N1/2 313 (1999) (with Alan Sykes).

Lawyers and Confidentiality, 65 U. Chi. L. Rev. 1 (1998).

The Law and Economics of Vanishing Premium Life Insurance, 22 Del. J. Corp. Law 1 (1997) (with Robert S. Stillman).

Clustering and Competition in Asset Markets, 20 J. Law & Econ. 23 (1997) (with Sanford J. Grossman, Merton H. Miller, Kenneth R. Cone and David J. Ross).

Corporate Crime, 25 J. Legal Studies 319 (1996) (with Alan O. Sykes).

The Use of Trading Models to Estimate Aggregate Damages in Securities Fraud Litigation:   A Proposal for Change, in Securities Class Actions:  Abuses and Remedies (The National Legal Center for the Public Interest, 1994) (with David J. Ross).

Civil Rico After Reves: An Economic Commentary, 1993 Sup. Ct. Rev. 157 (with Alan O. Sykes).

Contract and Fiduciary Duty, 36 J. Law & Econ. 425 (1993) (with Frank H. Easterbrook).

Should the Law Prohibit "Manipulation" in Financial Markets?, 105 Harv. L. Rev. 503 (1991) (with David J. Ross).

Efficient Capital Markets, the Crash, and the Fraud on the Market Theory, 74 Cornell L. Rev. 907 (1989).

The Corporate Contract, 89 Colum. L. Rev. 1416 (1989) (with Frank H. Easterbrook); also published in Corporate Law and Economic Analysis (Cambridge University Press 1990) (Lucian Bebchuk ed.).

The Economics of Lender Liability, 99 Yale L. J. 131 (1989).

Should One Agency Regulate Financial Markets, in Black Monday and the Future of Financial Markets (R. Kormendi, R. Kamphuis & J. W. H. Watson, ed.) (Dow Jones-Irwin Inc., 1988).

ERISA's Fundamental Contradiction:  The Exclusive Benefit Rule, 55 U. Chi. L. Rev. 1105 (1988) (with John H. Langbein).

From MITE to CTS:  Takeovers, the Williams Act and the Commerce Clause, 1987 Sup. Ct. Rev. 47.

The Regulation of Banks and Bank Holding Companies, 73 Va. L. Rev. 301 (1987) (with Andrew M. Rosenfield and Robert S. Stillman).

The Regulation of Accounting:  Some Economic Issues, 52 Brooklyn L. Rev. 1051 (1987).

Organized Exchanges and the Regulation of Dual Class Common Stock, 54 U. Chi. L. Rev. 119 (1987).

Comparable Worth and Discrimination in Labor Markets, 53 U. Chi. L. Rev. 891 (1986) (with Edward P. Lazear).

Comparable Worth:  A Rejoinder, 53 U. Chi. L. Rev. 950 (1986) (with Edward P. Lazear).

Close Corporations and Agency Costs, 38 Stan. L. Rev. 271 (1986) (with Frank H. Easterbrook).

The Role of Liability Rules and the Derivative Suit in Corporate Law:  A Theoretical and Empirical Analysis, 71 Corn. L. Rev. 261 (1986) (with Michael Bradley).

Regulatory Conflict and Entry Regulation of New Futures Contracts, 59 J. Bus. S85 (1985).

Optimal Damages in Securities Cases, 52 U. Chi. L. Rev. 611 (1985) (with Frank H. Easterbrook).

The Business Judgment Rule and the Trans Union Case, 40 Bus. Law. 1437 (1985).

Insider Trading and Investment Analysts:  An Economic Analysis of Dirks v. SEC, 13 Hofstra L. Rev. 127 (1984).

Limited Liability and the Corporation, 52 U. Chi. L. Rev. 89 (1985) (with Frank H. Easterbrook).

Labor Markets and Labor Law Compared with Capital Markets and Corporate Law, 51 U. Chi. L. Rev. 1061 (1984).

Customer Protection in Futures and Securities Markets, 4 J. Futures Markets 273 (1984) (with Sanford J. Grossman).

Mandatory Disclosure and the Protection of Investors, 70 Va. L. Rev. 669 (1984) (with Frank H. Easterbrook).

The Appraisal Remedy In Corporate Law, 1983 Am. Bar Found. Res. J. 875.

The Regulation of Insider Trading, 35 Stan. L. Rev. 857 (1983) (with Dennis W. Carlton).

Voting in Corporate Law, 26 J. Law & Econ. 395 (1983) (with Frank H. Easterbrook).

Auctions and Sunk Costs in Tender Offers, 35 Stan. L. Rev. 1 (1982) (with Frank H. Easterbrook).

The Corporate Governance Movement, 35 Vand. L. Rev. 1259 (1982).

Use of Modern Finance Theory in Securities Fraud Cases Involving Actively Traded Securities, 38 Bus. Law 1 (1982).

Antitrust Suits By Targets of Tender Offers, 80 Mich. L. Rev. 1155 (May 1982) (with Frank H. Easterbrook).

Corporate Control Transactions, 91 Yale L. J. 698 (1982) (with Frank H. Easterbrook).

The "Race to the Bottom" Revisited:  Reflections on Recent Developments in Delaware Corporation Law, 76 Nw. Univ. L. Rev. 913 (1982).

Takeover Bids, Defensive Tactics and Shareholders' Welfare, 36 Bus. Law 1733 (1981) (with Frank H. Easterbrook).

The Law and Economics of Dividend Policy, 67 Va. L. Rev. 699 (1981).

The Proper Role of a Target's Management in Responding to a Tender Offer, 94 Harv. L. Rev. 1161 (1981) (with Frank H. Easterbrook) (awarded prize by Emory University for best paper written in law and economics for the year 1981).

Secondary Liability Under Section 10(b) of the Securities Act of 1934, 69 California L. Rev. 80 (1981).

Efficient Capital Market Theory, the Market for Corporation Control, and the Regulation of Cash Tender Offers, 57 Tex. L. Rev. 1 (1978); reprinted in K. Scott and R. Posner ed., Economic Perspectives on Corporation Law and Securities Regulation (Little Brown 1980).

Antitrust Liability for Attempts to Influence Government Action:  The Basis and Limits of the Noerr-Pennington Doctrine, 45 U. Chi. L. Rev. 80 (1977).

Comment, <u>The Demand and Standing Requirements in Stockholder Derivation Actions</u>, 44 U. Chi. L. Rev. 168 (1977).

Comment, <u>The Use of Government Judgments in Private Antitrust Litigation:  Clayton Act Section 5(a), Collateral Estoppel, and Jury Trial</u>, 43 U. Chi. L. Rev. 338 (1976).

**<u>EDUCATION</u>**

<u>University of Chicago Law School</u>, Chicago, Illinois; J.D. 1977, cum laude; Order of the Coif; Comment Editor, Vol. 44, <u>University of Chicago Law Review</u>; Approximately top 1% of the Class. Awarded Casper Platt Award for best paper written by a student of the University of Chicago Law School; awarded Jerome N. Frank Prize for excellence in legal writing while a member of the University of Chicago Law Review, 1975 - 1977. Studied law and economics with Richard Posner and other members of the faculty.


<u>Brown University</u>, Providence, Rhode Island; M.A. 1974 in American History.

<u>Cornell University</u>, Ithaca, New York; major-American History; minor-Economics; B.A. 1972.

## **TESTIMONY**

Deposition of Daniel R. Fischel in Robert E. Morley, Jr. and REM Holdings 3, LLC vs. Square, Inc., Jack Dorsey, and James McKelvey, Jr., United States District Court for the Eastern District of Missouri, Eastern Division, Civil Action No. 14-CV-00172-SNLJ (February 19, 2016).

Testimony of Daniel R. Fischel In the Matter of the Application of U.S. Bank National Association, The Bank of New York Mellon, et al., Supreme Court of the State of New York, County of New York, Index No. 652382/2014 (January 20 and 21, 2016).

Testimony of Daniel R. Fischel in Sangeeth Peruri v. Ameriprise Financial, Inc., et al, American Arbitration Association Case No. 01-15-0002-3991 (December 7, 2015).

Deposition of Daniel R. Fischel In the Matter of the Application of U.S. Bank National Association, The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., et al, In the Supreme Court of the State of New York, County of New York, Index No. 652382/2014 (December 3, 2015).

Testimony of Daniel R. Fischel in Securities and Exchange Commission v. Arkadiy Dubovoy, et al, In the United States District Court for the District of New Jersey, Civil Case No. 15-cv-6076-MCA (October 8, 2015).

Deposition of Daniel R. Fischel in Steven A. Stender, Harold Silver and Infinity Clark Street Operating, L.L.C., on behalf of themselves and all others similarly situated v. Archstone-Smith Operating Trust, et al., in the United States District Court for the District of Colorado, Case No. 07-CV-02503-WJM-MJW (July 24, 2015).

Testimony of Daniel R. Fischel In Re: Determination of Royalty Rates and Terms for Ephemeral Recording and Digital Performance of Sound Recordings (Web IV), in the United States Copyright Royalty Judges, The Library of Congress, Docket No. 14-CRB-0001-WR (2016-2020) (May 21 and 22, 2015).

Deposition of Daniel R. Fischel In Re: Determination of Royalty Rates and Terms for Ephemeral Recording and Digital Performance of Sound Recordings (Web IV), in the United States Copyright Royalty Judges, The Library of Congress, Docket No. 14-CRB-0001-WR (2016-2020) (April 1, 2015).

Deposition of Daniel R. Fischel in MacDermid, Incorporated vs. Cookson Group, PLC, Cookson Electronics and Enthone, Inc., in the Superior Court, Judicial District of Waterbury, Docket No. UWY-CV-12-6016356-S (January 21, 2015)

Testimony of Daniel R. Fischel in the Securities and Exchange Commission vs. Samuel E. Wyly and Donald R. Miller, Jr., in his capacity as the Independent Executor of the Will and Estate of Charles J. Wyly, Jr., in the United States District Court, Southern District of New York, 10 Civ. 5760 (SAS) (November 17, 2014).

Deposition of Daniel R. Fischel In Re: Activision Blizzard, Inc. Stockholder Litigation, In the Court of Chancery of the State of Delaware, Consolidated C.A. No. 8885-VCL (October 17, 2014).

Testimony of Daniel R. Fischel in Hugh M. Caperton, Harman Development Corporation, Harman Mining Corporation, and Sovereign Coal Sales, Inc. v. A.T. Massey Coal Company, Inc., In the Circuit Court for Buchanan County, Case No. 027CL10000771-00 (May 20 and 21, 2014).

Deposition of Daniel R. Fischel in Center Partners, Ltd., et al v. Urban Shopping Centers, L.P., et al., In the Circuit Court of Cook County, Illinois, County Department, Law Division, Case No. 04 L 012194 (April 24, 2014).

Deposition of Daniel R. Fischel in Third Point LLC v. William F. Ruprecht, et al and Sotheby's, In the Court of Chancery of the State of Delaware, C.A. No. 9469-VCP (April 19, 2014).

Deposition of Daniel R. Fischel in Hugh M. Caperton, Harman Development Corporation, Harman Mining Corporation, and Sovereign Coal Sales, Inc. v. A.T. Massey Coal Company, Inc., In the Circuit Court for Buchanan County, Case No. 027CL10000771-00 (March 14, 2014).

Deposition of Daniel R. Fischel in Corre Opportunities Fund, LP, Zazove Associates LLC, DJD Group LLLP, First Derivative Traders LP, and Kevan A. Fight vs. Emmis Communications Corporation, United States District Court, Southern District of Indiana, Indianapolis Division, Case No. 1:12-cv-0491-SEB-TAB (October 4, 2013).

Testimony of Daniel R. Fischel In the Matter of the Application of The Bank of New York Mellon, (As Trustee Under Various Pooling and Servicing Agreements and Indenture Trustee under various indentures), Petitioner, for an order, pursuant to CPLR §7701, seeking judicial instructions and approval of a proposed settlement, Index No. 651786/11, Supreme Court of the State of New York, County of New York: Trial Term Part 39 (September 9 and 10, 2013).

Testimony of Daniel R. Fischel In Re: September 11 Litigation, Case No. 21 MC 97 (AKH), United States District Court for the Southern District of New York, (July 16, 2013)

Deposition of Daniel R. Fischel in Cantor Fitzgerald & Co., et al v. American Airlines, Inc., et al, Case No. 21 MC 101 (AKH), 04 CV 7318 (AKH), United States District Court, Southern District of New York (July 1, 2013).

Deposition of Daniel R. Fischel In Re: Pfizer Inc. Securities Litigation, Case No. 04 Civ. 9866 (RO) In The United States District Court for the Southern District of New York (June 28, 2013).

Testimony of Daniel R. Fischel in William T. Esrey, Julie C. Esrey, Ronald T. LeMay and Casondra C. Lemay v. Ernst & Young LLP Arbitration, Case No. 13 107 Y 02332 11 (May 29, 2013).

Deposition of Daniel R. Fischel in Christine Bauer-Ramazani and Carolyn B. Duffy, on behalf of themselves and all other similarly situated v. Teachers Insurance and Annuity Association of America – College Retirement and Equities Fund (TIAA-CREF), et al, in the United States District Court, District of Vermont, Docket No. 1:09-cv-190 (May 21, 2013).

Deposition of Daniel R. Fischel In Re: Google Inc. Class C Shareholder Litigation, In the Court of Chancery of the State of Delaware, Case No. 7469CS (May 17, 2013).

Deposition of Daniel R. Fischel <u>In the Matter of the application of The Bank of New York Mellon (as Trustee under various Pooling and Servicing Agreements and Indenture Trustee under various Indentures), et al.</u>, Supreme Court of the State of New York, County of New York, Index No. 651786/2011 (May 9, 2013).

Deposition of Daniel R. Fischel in <u>William T. Esrey, Julie C. Esrey, Ronald T. Lemay, and Casondra C. Lemay v. Ernst & Young, L.L.P.</u>, Before the American Arbitration Association, Case No. 1234 (May 7, 2013).

Deposition of Daniel R. Fischel in <u>Archer Well Company, Inc. v. GW Holdings LLC and Wexford Capital LP</u>, in the United States District Court, Southern District of New York, ECF Case No. 1 1:12-cv-06762-JSR (April 5, 2013).

Testimony of Daniel R. Fischel in <u>Meso Scale Diagnostics, LLC , Meso Scale Technologies, LLC v. Roche Diagnostics GmbH, et al.</u>, In the Court of Chancery of the State of Delaware, Civil Action No. 5589-VCP (February 27, 2013).

Deposition of Daniel R. Fischel in <u>Center Partners, Ltd. et al v. Urban Shopping Centers, L.P., et al</u>, Circuit Court of Cook County, Illinois, No. 04 L 012194 (February 6 and 7, 2013).

Deposition of Daniel R. Fischel <u>In Re: September 11 Litigation</u>, United States District Court, Southern District of New York, Civil Action No. 21 MC 101 (AKH) (January 11, 2013).

Deposition of Daniel R. Fischel in <u>Meso Scale Diagnostics, LLC, Meso Scale Technologies, LLC v. Roche Diagnostics GmbH, et al.</u>, In the Court of Chancery of the State of Delaware, Case No: 5589-VCP (November 12, 2012).

Testimony of Daniel R. Fischel in <u>Stuart Bederman, et al. v. Archstone, f/k/a Archstone-Smith Operating Trust,</u> Arbitration before the Honorable Bruce W. Kauffman (October 17, 2012).

Deposition of Daniel R. Fischel in <u>David E. Brown, et al. v. Authentec, Inc. et al.</u>, In the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida, Civil Division, Case No. 05-2012-CA-57589 (September 18, 2012).

Deposition of Daniel R. Fischel in <u>Stuart Bederman, et al. v. Archstone, f/k/a Archstone-Smith Operating Trust,</u> Arbitration before the Honorable Bruce W. Kauffman (September 14, 2012).

Testimony of Daniel R. Fischel in <u>Tronox, Incorporated, et al., v. Kerr-McGee Corporation, et al.</u>, United States Bankruptcy Court, Southern District of New York, Adversary Proceeding No. 09-10098(ALG) (August 7, 8 and 9, 2012).

Deposition of Daniel R. Fischel <u>In re McAfee, Inc. Shareholder Litigation</u>, Superior Court of the State of California, County of Santa Clara, Lead Case No. 1:10-cv-180413 (August 2, 2012).

Testimony of Daniel R. Fischel in <u>Kraft Foods Global, Inc., v. Starbucks Corporation</u>, Arbitration Before JAMS, Arbitration No. 1340008345 (July 31, 2012).

Deposition of Daniel R. Fischel in <u>Altana Pharma AG, and Wyeth v. Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries, Ltd.,</u> In the United States District Court, District

of New Jersey, Consolidated Civil Action Nos. 04-2355 (JLL)(CCC), 05-1966 (JLL)(CCC), 05-3920 (JLL)(CCC) and 05-3672 (JLL)(CCC) (June 1, 2012).

Deposition of Daniel R. Fischel in Kraft Foods Global, Inc. v. Starbucks Corporation, Arbitration before JAMS, Arbitration No. 1340008345 (May 15, 2012).

Deposition of Daniel R. Fischel in Capital One Financial Corporation v. John A. Kanas and John Bohlsen, In the United States District Court for the Eastern District of Virginia, Alexandria Division, Civil Action No. 1:11-cv-750 (LO/TRJ) (May 10, 2012).

Deposition of Daniel R. Fischel In Re: Pfizer Inc. Securities Litigation, In the United States District Court, Southern District of New York, Case 1:04-cv-09866-LTS-HBP (May 3, 2012).

Deposition of Daniel R. Fischel In Re: Moneygram International Inc. Shareholder Litigation, In the Court of Chancery of the State of Delaware, C.A. No. 6387-VCL (April 26, 2012).

Deposition of Daniel R. Fischel in Chona Allison, et al v. CRC Insurance Services, Inc., In the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 10-3313 (March 14 and 15, 2012).

Deposition of Daniel R. Fischel In Re: Tronox Incorporated, et al., Debtors, In the United States Bankruptcy Court, Southern District of New York, Chapter 11, Case No. 09-10156 (ALG) (February 24, 2012).

Testimony of Daniel R. Fischel In Re: BankAtlantic Bancorp, Inc. Litigation, In the Court of Chancery of the State of Delaware, Consolidated Civil Action No. 7068-VCL (January 27 and 30, 2012).

Deposition of Daniel R. Fischel in Hildene Capital Management, LLC et al v. BankAtlantic Bancorp, Inc., et al, In the Court of Chancery of the State of Delaware, C.A. No. 7068-VCL (January 19, 2012).

Deposition of Daniel R. Fischel in Advanced Analogic Technologies, Incorporated v. Skyworks Solutions, Inc. and Powerco Acquisition Corp., In the Court of Chancery of the State of Delaware, Arbitration No. 005-A-CS (November 18, 2011).

Testimony of Daniel R. Fischel in Prudential Retirement Insurance and Annuity Company v. State Street Bank and Trust Company and State Street Global Advisors, Inc., United States District Court, Southern District of New York, Case No. 07-CV-8488 (October 13, 2011).

Deposition of Daniel R. Fischel In re: Inkeepers USA Trust, et al v. Cerberus Series Four Holdings, LLC., et al, United States Bankruptcy Court, Southern District of New York, Case No. 10-13800 (SCC) (October 5, 2011).

Deposition of Daniel R. Fischel in Mary K. Jones, et al v. Pfizer, Inc., et al, United States District Court, Southern District of New York, Civil Action No. 10-cv-03864 (AKH) ECF (October 4, 2011).

Testimony of Daniel R. Fischel in Marina Del Rey Country Club Apartments, et al. vs. Archstone and Archstone Multifamily Series I Trust, Ruby/Archstone Arbitration (August 30, 2011).

Deposition of Daniel R. Fischel in <u>Maher Terminals, LLC v. The Port Authority of New York and New Jersey</u>, Before the Federal Maritime Commission, FMC Docket No. 08-03 (August 25, 2011).

Testimony of Daniel R. Fischel in <u>Securities and Exchange Commission v. Joseph P. Nacchio, Robert S. Woodruff, Afshin Mohebbi, James J. Kozlowski and Frank T. Noyes</u>, United States District Court for the District of Colorado, Civil Action No. 05-cv-480-MSK-CBS (August 16, 2011).

Affidavit of Daniel R. Fischel in <u>Glenhill Capital LP, et al v. Porsche Automobil Holding, SE, f/k/a Dr. Ing. h.c. F. Porsche AG</u>, Supreme Court of the State of New York, County of New York, Index Number 650678/2011 (August 15, 2011).

Deposition of Daniel R. Fischel in <u>Fairfax Financial Holdings Limited and Crum & Forster Holdings Corp. v. S.A.C. Capital Management, LLC, et al.</u>, Superior Court of New Jersey, Law Division: Morris County, Docket No. MRS-L-2032-06 (July 27, 2011).

Deposition of Daniel R. Fischel <u>In re: Lyondell Chemical Company, et al v. Leonard Blavatnik, et al.</u>, United States Bankruptcy Court, Southern District of New York, Chapter 11 Case No. 09-10023 – (REG) (Jointly Administered) (July 25, 2011).

Deposition of Daniel R. Fischel <u>In Re Constar Int'l Inc. Securities Litigation</u>, United States District Court, Eastern District of Pennsylvania, Master File No. 03cv05020 (June 28, 2011).

Affidavit of Daniel R. Fischel <u>In Re Massey Energy Co. Derivative and Class Action Litigation</u>, In The Court of Chancery of the State of Delaware, C.A. No. 5430-VCS (May 20, 2011).

Deposition of Daniel R. Fischel in <u>Marina Del Rey Country Club, et al v. Archstone and Archstone Multifamily Series I Trust</u>, Ruby/Archstone Arbitration (May 9, 2011).

Testimony of Daniel R. Fischel in <u>The Dow Chemical Company v. Petrochemical Industries Company (K.S.C.)</u>, International Chamber of Commerce, International Court of Arbitration, ICC Case No. 16127/JEM/MLK (April 7, 2011).

Testimony of Daniel R. Fischel <u>In Re: Tribune Company, et al., Debtors</u>, In the United States Bankruptcy Court for the District of Delaware, Chapter 11, Case No. 08-13141 (KJC) (March 10, 2011).

Deposition of Daniel R. Fischel <u>In Re: Tribune Company, et al., Debtors</u>, In the United States Bankruptcy Court for the District of Delaware, Chapter 11, Case No. 08-13141 (KJC) (March 2, 2011).

Deposition of Daniel F. Fischel <u>In Re: Genetically Modified Rice Litigation</u>, In the United States District Court for the Eastern District of Missouri, Eastern Division, Case No. 4:06 MD 1811 CDP (February 15, 2011).

Deposition of Daniel R. Fischel in <u>Riceland Food, Inc. v. Bayer Cropscience LP, et al</u>, In the United States District Court, Eastern District of Missouri, Eastern Division, Case No. 4:09-cv-00433 CDP (January 18, 2011).

Deposition of Daniel R. Fischel <u>In Re:  Genetically-Modified Rice Litigation</u>, In the United States District Court for the Eastern District of Missouri, Case No. 4:06-MD-1811 (November 11, 12, 2010).

Deposition of Daniel R. Fischel in <u>Coleen Witmer, Individually, and on Behalf of All Others Similarly Situated v. Dynegy Inc.</u>, In the District Court of Harris County, Texas, 234th Judicial District (November 6, 2010).

Testimony of Daniel R. Fischel in <u>Terra Firma (GP) 2 Investments Limited v. Citigroup Inc.</u>, United States District Court for the Southern District of New York, No. 1:09-CV-10459 (JSR) (November 2, 2010).

Testimony of Daniel R. Fischel in <u>Terra Firma (GP) 2 Investments Limited v. Citigroup Inc.</u>, United States District Court for the Southern District of New York, No. 1:09-CV-10459 (JSR)  (October 22, 2010).

Testimony of Daniel R. Fischel in <u>Air Products and Chemicals, Inc. v. Airgas, Inc., Peter McCausland, et al</u>, In the Court of Chancery of the State of Delaware, C.A. No. 5249-CC (October 5, 2010).

Deposition of Daniel R. Fischel in <u>Air Products and Chemicals, Inc. v. Airgas, Inc., Peter McCausland, et al</u>, In the Court of Chancery of the State of Delaware, C.A. No. 5249-CC (September 8, 2010).

Deposition of Daniel R. Fischel in <u>Terra Firma (GP) 2 Investments Limited v. Citigroup Inc.</u>, United States District Court for the Southern District of New York, No. 1:09-CV-10459 (JSR) (July 28, 2010).

Deposition of Daniel R. Fischel in <u>Citadel Investment Group, L.L.C. et al v. Mikhail Malyshev and Jace Kohlmeier</u>, In the American Arbitration Association, Case No.AAA No. 51 166 00969 09 (July 13, 2010).

Testimony of Daniel R. Fischel <u>In Re: United States of America v. Joseph P. Nacchio</u>, in the United States District Court for the District of Colorado, Case No. 05-CR-00545-EWN (June 23, 2010).

Deposition of Daniel R. Fischel in <u>Cantor Fitzgerald Securities, Cantor Fitzgerald & Co., Cantor Fitzgerald Partners v. The Port Authority of New York and New Jersey</u>, in the Supreme Court of the State of New York, County of New York, Case No. 105447/94 (June 4, 2010).

Deposition of Daniel R. Fischel in <u>Alaska Retirement Management Board on behalf of State of Alaska Public Employees' Retirement System and State of Alaska Teachers' Retirement System v. Mercer (US), Inc., Mercer Human Resources Consulting, Inc., and William M. Mercer, Inc.</u>, in The Superior Court for the State of Alaska, First Judicial District at Juneau, Case No. 1JU-07-974CI (April 29, 2010).

Deposition of Daniel R. Fischel <u>In Re: ACS Shareholders Litigation</u>, in The Court of Chancery of the State of Delaware, Consolidated Case No. 4940-VCP (April 26, 2010).

Testimony of Daniel R. Fischel in <u>Securities and Exchange Commission v. Carl W. Jasper</u>, in the United States District Court for the Northern District of California, San Jose Division, Case No. C-07-06122-JW (April 16, 2010).

Deposition of Daniel R. Fischel in <u>Prudential Retirement Insurance and Annuity Company v. State Street Bank and Trust Company and State Street Global Advisors, Inc.</u>, in the United States District Court, Southern District of New York, Case No. 07 CIV 8488 (April 9, 2010).

Deposition of Daniel R. Fischel <u>In re: Lyondell Chemical Company, et al., Debtors.  Official Committee of Unsecured Creditors, on behalf of the Debtors' Estates v. Citibank, N.A., et al.</u>, in the United States Bankruptcy Court, Southern District of New York, Chapter 11 Case No. 09-10023 – (RED) (December 2, 2009).

Deposition of Daniel R. Fischel in <u>Securities and Exchange Commission v. Carl W. Jasper</u>, In the United States District Court, Northern District of California, San Jose Division, Case No. CV 07-6122 (HRL) (October 22, 2009).

Testimony of Daniel R. Fischel in <u>Ventas, Inc. v. HCP, Inc.</u>, In the United States District Court of the Western District of Kentucky at Louisville, Civil Action No. 3:07-cv-00238-JGH (September 2, 2009).

Deposition of Daniel R. Fischel in <u>Frank K. Cooper Real Estate #1, Inc., et al vs. Cendant Corporation f/k/a Hospitality Franchise Systems and Century 21 Real Estate Corporation</u>, Superior Court of New Jersey, Law Division: Morris County, Docket No. MRS-L-377-02 (August 10, 2009).

Deposition of Daniel R. Fischel in <u>Ventas, Inc. v. HCP, Inc.</u>, In the United States District Court of the Western District of Kentucky at Louisville, Civil Action No. 3:07-cv-00238-JGH (August 3, 2009).

Deposition of Daniel R. Fischel in <u>U.S. Commodity Futures Trading Commission v. Amaranth Advisors, L.L.C., Amaranth Advisors (Calgary) and Brian Hunter</u>, in the United States District Court, Southern District of New York, Case No. 07 CIV 6682 (July 8, 2009).

Declaration and Expert Surrebutal Report of Daniel R. Fischel in <u>Ventas, Inc. v. HCP, Inc.</u>, In The United States District Court for the Western District of Kentucky at Louisville, Case No. 3:07-CV-00238-JGH (June 22, 2009).

Testimony of Daniel R. Fischel in <u>NRG Energy, Inc. v. Exelon Corporation and Exelon Exchange Corporation</u>, in the United States District Court, Southern District of New York, Case No. 09-CV-2448 (JGK) (DFE), (June 3, 2009).

Deposition of Daniel R. Fischel In <u>Re: Delphi Corporation v. Appaloosa Management L.P., et al.</u>, In the United States Bankruptcy Court, Southern District of New York; Chapter 11, Case No. 05-44481(RDD) (Jointly administered), (June 2, 2009).

Deposition of Daniel R. Fischel in <u>NRG Energy, Inc. v. Exelon Corporation and Exelon Exchange Corporation</u>, in the United States District Court, Southern District of New York, Case No. 09-CV-2448 (JGK) (DFE), (May 31, 2009).

Deposition of Daniel R. Fischel in <u>e-Bay Domestic Holdings, Inc. v. Craig Newmark and James Buckmaster and Craigslist, Inc.</u>, in the Court of Chancery of the State of Delaware, Case No. 3705-CC (May 29, 2009)

Testimony of Daniel R. Fischel In Re: Lawrence E. Jaffe Pension Plan, et al v. Household International, Inc., et al, in the United States District Court for the Northern District of Illinois, Eastern Division, No. 02-C-5893 (April 16, 20, 28 and 29, 2009).

Deposition of Daniel R. Fischel In Re: Rohm and Haas Company v. The Dow Chemical Company and Ramses Acquisition Corp., In the Court of Chancery of the State of Delaware, C.A. No. 4309-CC (March 4, 2009).

Deposition of Daniel R. Fischel In the Matter of Hoffman, et al. v. American Express Travel Related Services Company, Inc., et al., in the Superior Court of the State of California, in and for the County of Alameda, Case No. 2001-022881 (January 15, 2009).

Deposition of Daniel R. Fischel In Re: TyCom Ltd. Securities Litigation, in the United States District Court, District of New Hampshire, Docket No. 03-CV-1352 (September 22, 2008).

Deposition of Daniel R. Fischel In Re: Hexion Specialty Chemicals, Inc., et al v. Huntsman Corp., in the Court of Chancery of the State of Delaware, Civil Action No. 3841-VCL (September 4, 2008).

Deposition of Daniel R. Fischel In Re: Stone Energy Corp. Securities Litigation, in the United States District Court, Western District of Louisiana, Lafayette-Opelousas Division, Civil Action No. 6:05CV2088 (LEAD) (July 16, 2008).

Deposition of Daniel R. Fischel In Re: Initial Public Offering Securities Litigation, in the United States District Court, Southern District of New York, Master File No. 21 MC 92 (SAS) (April 3 and 4, 2008).

Deposition of Daniel R. Fischel In Re: Lawrence E. Jaffe Pension Plan, et al v. Household International, Inc., et al, in the United States District Court for the Northern District of Illinois, Eastern Division, No. 02-C-5893 (March 21, 2008).

Deposition of Daniel R. Fischel In Re: IAC/InteractiveCorp and Barry Diller v. Liberty Media Corporation, in the Court of Chancery of the State of Delaware in and for New Castle County, Consolidated Case Number 3486-VCL (February 29, 2008).

Testimony of Daniel R. Fischel In Re: Immunicon Corporation v. Veridex LLC, before the American Arbitration Association (Commercial Arbitration Rules), Case Number 50 180T 00192 07 (January 17, 2008).

Deposition of Daniel R. Fischel In Re: Unitedglobalcom Shareholders Litigation, in the Court of Chancery of the State of Delaware in and for New Castle County, Consolidated C.A. No. 1012-N (November 19, 2007).

Deposition of Daniel R. Fischel In Re: Cendant Corporation Litigation, in the United States District Court for the District of New Jersey, Master File No. 98-1664 (WHW) (November 15, 2007).

Deposition of Daniel R. Fischel In Re: Cendant Corporation Litigation, in the United States District Court for the District of New Jersey, Master File No. 98-1664 (WHW) (October 16, 2007).

Deposition of Daniel R. Fischel In Re Schering-Plough Corporation Securities Litigation, in the United States District Court for the District of New Jersey, Master File No. 01-CV-0829 (KSH/RJH) (October 12, 2007).

Deposition of Daniel R. Fischel In Re: Carpenters Health & Welfare Fund, et al. vs. The Coca-Cola Company, in the United States District Court, Northern District of Georgia, Atlanta Division, File No. 1:00-CV-2838-WBH (Consolidated) (September 26, 2007).

Deposition of Daniel R. Fischel In Re: Parker Freeland, et al., vs. Iridium World Communications, Ltd., et al., in the United States District Court for the District of Columbia, Civil Action No. 99-1002 (August 7, 2007).

Deposition of Daniel R. Fischel In Re: Chuck Ginsburg v. Philadelphia Stock Exchange, Inc., et al., In the Court of Chancery of the State of Delaware in and for New Castle County, C.A. No. 2202-N (June 12, 2007).

Testimony of Daniel R. Fischel In Re: Holcombe T. Green and HTG Corp. v. McKesson, Inc., et al, In the Superior Court for the County of Fulton, State of Georgia, Civil Action File No. 2002-CV-48407 (June 5, 2007).

Affidavit of Daniel R. Fischel In Re: Lear Corporation Shareholders Litigation, In the Court of Chancery of the State of Delaware, Consolidated C.A. No. 2728-VCS (May 30, 2007).

Affidavit of Daniel R. Fischel In Re: Aeroflex, Inc. Shareholder Litigation, in the Supreme Court of the State of New York, County of Nassau: Commercial Division, Index No. 07-003943 (May 23, 2007).

Deposition of Daniel R. Fischel In Re: Holcombe T. Green and HTG Corp. v. McKesson, Inc., HBO & Company, Albert Bergonzi, and Jay Gilbertson, in the Superior Court for the County of Fulton, State of Georgia, Civil Action File No. 2002W48407 (May 21, 2007).

Deposition of Daniel R. Fischel In Re: Adelphia Communications Corp. v. Deloitte & Touche LLP, et al, in the Court of Common Pleas, Philadelphia County, Pennsylvania, Case No. 000598 (May 3 and 4, 2007).

Testimony of Daniel R. Fischel In Re: United States of America v. Joseph P. Nacchio, in the United States District Court for the District of Colorado, Case No. 05-CR-00545-EWN (April 9, 2007).

Deposition of Daniel R. Fischel In Re: MK Resources Company Shareholders Litigation, in the Court of Chancery for the State of Delaware in and for New Castle County, C.A. No. 1692-N (February 22, 2007).

Deposition of Daniel R. Fischel In Re: Starr International Company, Inc. v. American International Group, Inc., In the United States District Court, Southern District of New York, Case No. 05 CV 6283 (January 26, 2007).

Written testimony of Daniel R. Fischel In Re: Verizon Communications Inc. and Verizon Services Corp. v. Christopher G. Pizzirani, In the United States District Court for the Eastern District of Pennsylvania, Case No. 2:06-cv-04645-MK (November 6, 2006).

Testimony of Daniel R. Fischel In Re: Northeast Savings, F.A. v. United States of America, In The United States Claims Court, Case No. 92-550 C (November 2 and 9, 2006).

Testimony of Daniel R. Fischel In Re: United States of America v. Sanjay Kumar and Stephen Richards, United States District Court, Eastern District of New York, 04 Civ. 4104 (ILG) (October 25, 2006).

Affidavit of Daniel R. Fischel In Re: Lionel I. Brazen and Nancy Hammerslough, et al v. Tyco International Ltd., et al, In the Circuit Court of Cook County, Illinois County Department, Chancery Division, No. 02 CH 11837 (September 18, 2006).

Deposition of Daniel R. Fischel In Re: Tele-Communications, Inc. Shareholders Litigation, in the Court of Chancery of the State of Delaware in and for New Castle County, Consolidated C.A. No. 16470 (September 15, 2006).

Affidavit of Daniel R. Fischel In Re: United States of America v. Sanjay Kumar and Stephen Richards, United States District Court, Eastern District of New York, 04 Civ. 4104 (ILG) (September 8, 2006).

Deposition of Daniel R. Fischel In Re: James Gilbert v. McKesson Corporation, et al., in the State Court of Fulton County, State of Georgia, Civil Action File No. 02VS032502C (September 7, 2006).

Supplemental Declaration of Daniel R. Fischel In Re: United States of America v. Jeffrey K. Skilling, in the United States District Court, Southern District of Texas, Houston Division, Crim. No. H-04-25 (Lake, J.) (August 25, 2006).

Affidavit of Daniel R. Fischel In Re: United States of America v. Sanjay Kumar and Stephen Richards, United States District Court, Eastern District of New York, 04 Civ. 4104 (ILG) (August 22, 2006).

Declaration of Daniel R. Fischel In Re: United States of America v. Jeffrey K. Skilling, in the United States District Court, Southern District of Texas, Houston Division, Crim. No. H-04-25 (Lake, J.) (August 3, 2006).

Deposition of Daniel R. Fischel In Re: Enron Corporation Securities Litigation, in the United States District Court, Southern District of Texas, Houston Division, Case Number: H-01-3624 (May 24, 2006).

Testimony of Daniel R. Fischel In Re: Guidant Corporation Shareholders Derivative Litigation, in the United States District Court, Southern District of Indiana, Indianapolis Division, Master Derivative Docket No. 1:03-CV-955-SEB-WTL (January 20, 2006).

Testimony of Daniel R. Fischel In Re. Hideji Jumbo Tanaka v. Cerberus Far East Management, L.L.C., et al., AAA Case No. 50 T 116 00284 03, (December 15, 2005).

Deposition of Daniel R. Fischel  In Re: McKesson HBOC, Inc. Securities Litigation, in the United States District Court for the Northern District of California, No. C-99-20743-RMW (August 16, 2005).

Testimony of Daniel R. Fischel In the Matter of Visconsi Companies Ltd., et al. and Lehman Brothers, et al., National Association of Securities Dealers Department of Arbitration, Grievance No. 03-07606 (July 26, 2005).

Testimony of Daniel R. Fischel in re: John P. Crowley, as Receiver of Ambassador Insurance Company v. Doris June Chait, et al., in the United States District Court for the District of New Jersey, Case No. 85-2441 (HAA) (July 21 and 22, 2005).

Deposition of Daniel R. Fischel In re: Electronic Data Systems Corporation Securities Litigation, in the United States District Court for the Eastern District of Texas, Tyler Division, Case No. 6:03-MD-1512 (July 20, 2005).

Testimony of Daniel R. Fischel in re: United States of America v. Philip Morris, Inc., et al, in the United States District Court for the District of Columbia, Case No. 1:99CV02496 (May 26 and 27, 2005).

Deposition of Daniel R. Fischel in re: Cordis Corporation v. Boston Scientific Corporation, et ano, in the United States District Court for the District of Delaware, Case No. 03-027-SLR (May 25, 2005).

Deposition of Daniel R. Fischel in re: United States of America v. Philip Morris, Inc., et al, in the United States District Court for the District of Columbia, Case No. 1:99CV02496 (May 16, 2005).

Testimony of Daniel R. Fischel in re: Drury Industries, Inc. v. Drury Properties, Inc., in the First Judicial District Court of the State of Nevada in and for Carson City, Nevada (April 6 and 7, 2005).

Deposition of Daniel R. Fischel in re: Jerry R. Summers and George T. Lenormand, et al v. UAL Corporation ESOP Committee, Marty Torres, Barry Wilson, Doug Walsh, Ira Levy, Don Clements, Craig Musa, and State Street Bank and Trust Company, in the United States District Court for the North District of Illinois, Eastern Division, No. 03 C 1537 (March 9, 2005).

Deposition of Daniel R. Fischel in re: Drury Industries, Inc. v. Drury Properties, Inc., in the First Judicial District Court of the State of Nevada in and for Carson City, Nevada (March 7 and 10, 2005).

Testimony of Daniel R. Fischel In the Matter of Fyffes PLC v. DCC PLC, S&L Investments Limited, James Flavin and Lotus Green Limited, in The High Court, Dublin, Ireland (2002 No. 1183P) (February 1 and 2, 2005).

Deposition of Daniel R. Fischel In the Matter of the Arbitration between The Canada Life Assurance Company and The Guardian Life Insurance Company of America (January 12, 2005).

Deposition of Daniel R. Fischel In Re: IDT Corporation vs. Telefonica, S.A., et al, in the United States District Court, District of New Jersey, Civil Action No. 01-CV 471 (December 14, 2004).

Deposition of Daniel R. Fischel In Re:  DQE, Inc. Securities Litigation, in the United States District Court, Western District of Pennsylvania, Master File No. 01-1851 (December 7, 2004)

Testimony of Daniel R. Fischel In Re United States of America v. Daniel Bayly, James A Brown, Robert S. Furst, Daniel O. Boyle, William R. Fuhs and Sheila K. Kahanek, in the United States District Court of Southern Texas Houston Division, Case No. H-CR-03-363 (November 4, 2004).

Testimony of Daniel R. Fischel In the Matter of the Arbitration Between The Canada Life Assurance Company, Petitioner v. Caisse Centrale De Reassurance, Respondent, (November 2, 2004).

Testimony of Daniel R. Fischel In Re Yankee Atomic Electric Company, Connecticut Yankee Atomic Power Company, and Maine Yankee Atomic Power Company v. The United States, in the United States Court of Federal Claims, Case Nos. 98-126C, 98-154C and 98-474C (August 9, 2004).

Affidavit of Daniel R. Fischel In Re Oracle Corp. Derivative Litigation, in the Court of the Chancery of the State of Delaware In and For New Castle County, Consolidated Civil Action No. 18751 (June 8, 2004).

Deposition of Daniel R. Fischel in re: Reading International, Inc., et al v. Regal Entertainment Group, et al, (Delaware Chancery Court) (May 30, 2004) .

Affidavit of Daniel R. Fischel in re: Reading International, Inc., et al v. Regal Entertainment Group, et al, (Delaware Chancery Court) (May 28, 2004) .

Deposition of Daniel R. Fischel in re: Northeast Savings, F.A. v. United States of America, in the United States Claims Court, Case No. 92-550-C (May 4, 5 and 6, 2004).

Deposition of Daniel R. Fischel in re:  Tyson Foods, Inc. Securities Litigation, in the United States District Court for the District of Delaware, Civil Action No. 01-425-SLR (March 18, 2004).

Testimony of Daniel R. Fischel Re: In the Matter of Coram Healthcare Corp. and Coram, Inc., Debtors, In the United States Bankruptcy Court for the District of Delaware, Case No. 00-3299 Through 00-3300 (MFW) (March 4, 2004).

Testimony of Daniel R. Fischel in Tracinda Corporation v. DaimlerChrysler AG, et al, in the United States District Court for the District of Delaware, Civil Action No. 00-984 (February 11, 2004).

Deposition of Daniel R. Fischel in Gerald K. Smith, as Plan Trustee for and on behalf of the Estates of Boston Chicken, Inc., et al. v. Arthur Anderson LLP, et al., in the United States District Court for the Northern District of Illinois, Case Nos. CIV-01-218-PHX-PGR, CIV-01-246-PHX-EHC, CIV-02-1162-PHX-PGR, CIV-02-1248-PHX-PGR (Consolidated) (October 29 and 30, 2003).

Deposition of Daniel R. Fischel in Irene Abrams, on behalf of herself and all others similarly situated v. Van Kampen Funds, Inc., Van Kampen Investment Advisory Corp., Van Kampen Prime Rate Income Trust, Howard Tiffen, Richard F. Powers III, Stephen L. Boyd,

Dennis J. McDonnell and Jeffrey W. Maillet, in the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 01-C-7538 (October 21, 2003).

Deposition of Daniel R. Fischel Re: In the Matter of Coram Healthcare Corp. and Coram, Inc., Debtors, In the United States Bankruptcy Court for the District of Delaware, Case No. 00-3299 Through 00-3300 (MFW) (October 13, 2003).

Testimony of Daniel R. Fischel in Transcore Holdings, Inc. v. Rocky Mountain Mezzanine Fund II, LP; Hanifen Imhoff Mezzanine Fund, LP; Moramerica Capital Corporation; and NDSBIC, LP and W. Trent Ates and Fred H. Rayner, In Re: Jams Arbitration, Case No. 1410003193 (September 24, 2003).

Deposition of Daniel R. Fischel in Transcore Holdings, Inc. v. Rocky Mountain Mezzanine Fund II, LP; Hanifen Imhoff Mezzanine Fund, LP; Moramerica Capital Corporation; and NDSBIC, LP and W. Trent Ates and Fred H. Rayner, In Re: Jams Arbitration, Case No. 1410003193 (May 13, 2003).

Deposition of Daniel R. Fischel in AT&T Broadband Management Corporation v. CSG Systems, Inc., American Arbitration Association No. 77 181 00159 02 VSS (April 9, 2003).

Deposition of Daniel R. Fischel In Re:  DaimlerChrysler AG Securities Litigation, in the United States District Court for the District of Delaware, Civil Action No. 00-993-JJF (February 11 and 12, 2003).

Deposition of Daniel R. Fischel in David T. Bard, Commissioner of Banking and Insurance for the State of Vermont, as Receiver for Ambassador Insurance Company v. Arnold Chait, et al, in the United States District Court for the District of New Jersey, Civil Action No. 85-2441 (December 12, 2002).

Testimony of Daniel R. Fischel in MHC Financing Limited Partnership, et al vs. City of San Rafael, et al, in the United States District Court, Northern District of California, Case No. C 00-3785 VRW (November 6, 2002).

Deposition of Daniel R. Fischel in MHC Financing Limited Partnership, et al vs. City of San Rafael, et al, in the United States District Court, Northern District of California, Case No. C 00-3785 VRW (October 16, 2002).

Deposition of Daniel R. Fischel in Maine Yankee Atomic Power Company v. United States of America, In the United States Court of Federal Claims, Case No. 98-474 C (October 8 and 9, 2002).

Testimony of Daniel R. Fischel in California Federal Bank, FSB v. The United States of America, In the United States Court of Federal Claims, Case No. 92-138C (September 20 and 23, 2002).

Deposition of Daniel R. Fischel in Maine Yankee Atomic Power Company v. United States of America, In the United States Court of Federal Claims, Case No. 98-474 C (September 4 and 6, 2002).

Deposition of Daniel R. Fischel In the Matter of RDM Sports Group, Inc., et al v. Smith, Gambrell, Russell, L.L.P.; et al, In the United States Bankruptcy Court for the Northern District of Georgia, Newnan Division, Case No. 00-1065 (May 14 and 15, 2002).

Deposition of Daniel R. Fischel in <u>Walter B. Hewlett, individually and as Trustee of the William R. Hewlett Revocable Trust, and Edwin E. van Bronkhorst as Co-Trustee of the William R. Hewlett Revocable Trust v. Hewlett-Packard Company</u>, in the Court of the Chancery of the State of Delaware in and for New Castle County (April 24, 2002).

Deposition of Daniel R. Fischel in <u>California Federal Bank, FSB, v. The United States of America</u>, in the United States District Court of Federal Claims, Case No. 92-138C (April 16 and 17, 2002).

Deposition of Daniel R. Fischel <u>In Re: Computer Associates Class Action Securities Litigation</u>, in the United States District Court, Eastern District of New York, File No. 98-CV-4839 (TPC) (MLO) (March 19 and 20, 2002).

Deposition of Daniel R. Fischel in <u>United States of America v. David Blech</u>, In the United States District Court, Southern District of New York, Case No. S1 97 Cr. 402 (KTD) (February 13, 2002).

Testimony of Daniel R. Fischel Re: <u>In the Matter of Coram Healthcare Corp. and Coram, Inc., Debtors</u>, In the United States Bankruptcy Court for the District of Delaware, Case No. 00-3299 Through 00-3300 (MFW) (December 14, 2001).

Deposition of Daniel R. Fischel in <u>Re: Sunbeam Securities Litigation</u>, In the United States District Court, Southern District of Florida, Miami Division, Case No. 98-8258-CIV – Middlebrooks (December 4, 5 and 6, 2001).

Affidavit of Daniel R. Fischel in Re: <u>Jack M. Webb, Special Deputy Receiver For American Eagle Insurance Company v. Elvis Mason, Mason Best Company, L.P., Don D. Hutson, American Eagle Group, Inc., Marion Phillip Guthrie, Frederick G. Anderson, George F. Cass, Richard M. Kurz, Patricia S. Pickard, Arthur Andersen & Co., L.L.P., and Towers, Perrin Forester & Crosby, Inc., D/B/A Tillinghast</u>, In the District Court of Travis County, Texas, 201st Judicial District, Cause No. 99-08253 (September 7, 2001).

Declaration of Daniel R. Fischel Re: <u>In the Matter of Inquiry Concerning High-Speed Access to the Internet Over Cable and Other Facilities:</u>  Before the Federal Communications Commission, Washington DC, GN Docket No. 00-185, (Declaration with K. Arrow, G. Becker, D. Carlton, R. Gertner, J. Kalt, H. Sider, and Gustavo Bamberger) (July 24, 2001).

Declaration of Daniel R. Fischel in Re:  <u>Walter Green, on behalf of himself and all others similarly situated</u> v. <u>Merck-Medco Managed Care, L.L.C.</u>, United States District Court, Southern District of New York, Civil Action No. 99 CIV 0847 (CLB) (June 18, 2001).

Testimony of Daniel R. Fischel in Re:<u>Tyson Foods, Inc. and Lasso Acquisition Corporation v. IBP, Inc.</u>, Delaware Chancery Court, (May 25, 2001).

Deposition of Daniel R. Fischel in Re:<u>Tyson Foods, Inc. and Lasso Acquisition Corporation v. IBP, Inc.</u>, Delaware Chancery Court, (May 10, 2001).

Deposition of Daniel R. Fischel in Re:  <u>Myron Weiner, Nicholas Sitnycky, Ronald Anderson and Robert Furman on behalf of themselves and all others similarly situated</u> v. <u>The Quaker Oats Company and William D. Smithburg</u>, United States District Court, Northern District of Illinois, Case No. 98 C 3123, (January 24, 2001).

Deposition of Daniel R. Fischel in Re:  Retsky Family Limited Partnership v. Price Waterhouse, LLP, United States District Court, Northern District of Illinois, Eastern Division, No. 97 C 7694, (October 31, 2000).

Joint Affidavit of Daniel R. Fischel and David J. Ross in Re:  Floyd D. Wilson, for himself and all others similarly situated v. Massachusetts Mutual Life Insurance Company, in the First Judicial District Court, County of Santa Fe, State of New Mexico, No. D0101 CV-98-02814 (August 4, 2000).

Affidavit of Daniel R. Fischel in Re:  T. Rowe Price Recovery Fund, L.P., and Carl Marks Management Co., L.P., individually and derivatively on behalf of Seaman Furniture Co., Inc. v. James Rubin, M.D. Sass Associates, Inc., Resurgence Asset Management, L.L.C., M.D. Sass Corporation Resurgence Partners, L.P. , M.D. Sass Corporate Resurgence International, Ltd., Robert Symington, Byron Haney, Alan Rosenberg, Steven H. Halper, and Peter McGeough and Seaman Furniture Co., Inc., In the Court of Chancery of the State of Delaware in and for New Castle County, C.A. No. 18013, (June 7, 2000).

Testimony of Daniel R. Fischel in Re:  Bank United of Texas, FSB, et al., v. United States of America, United States Court of Federal Claims, Case Number 95-437C, (October 12 and 14, 1999).

Deposition of Daniel R. Fischel in Re:  Bank United of Texas, FSB, et al., v. United States of America, United States Court of Federal Claims, Case Number 95-437C, (September, 26, 1999; July 10, 1999; and June 16, 17, 1999),

Testimony of Daniel R. Fischel in Re:  C. Robert Suess, et al., v. The United States, United States Court of Federal Claims, No. 90- 981C (May 17, 1999).

Testimony of Daniel R. Fischel in Re: Lexecon, Inc. v. Milberg Weiss Bershad Specthrie & Lerach, et al. in the United States District Court, Northern District of Illinois Eastern Division, Case No. 92 C 7768 (March 8, 9, 10 and 15, 1999).

Testimony of Daniel R. Fischel in Re:  California Federal Bank v. United States, in the United States Court of Federal Claims, Case Number 92-138C, (February 4 and 11, 1999).

Deposition of Daniel R. Fischel in Re:  California Federal Bank v. United States, in the United States Court of Federal Claims, Case Number 92-138C, (February 6, 1999; January 27 and 30, 1999).

Deposition of Daniel R. Fischel in Re:  C. Robert Suess, et al., v. The United States, United States Court of Federal Claims, No. 90- 981C (October 27 and 28, 1998).

Deposition of Daniel R. Fischel in Re:  Connector Service Corporation v. Jeffrey Briggs, United States District Court, Northern District of Illinois, Eastern Division, No. 97-C-7088 (August 28, 1998).

Deposition of Daniel R. Fischel in Re:  Statesman Savings Holding Corp., et al. v. United States of America, United States Court of Federal Claims, Case No. 90-773C, (May 4, 1998 and February 12, 1998).

Testimony of Daniel R. Fischel in Re:  Glendale Federal Bank FSB v. United States of America, United States Court of Federal Claims, No. 90-772C, (March 24, 25 and 26, 1998; September 2, 3, 4, 5, 8, 9, 10, 11, 12, 24, 25, 26 and 27, 1997; October 7, 9, 16, 17, 30 and 31, 1997; December 8, 9 and 10, 1997).

Affidavit of Daniel R. Fischel and David J. Ross in Re:  Publicis Communication v. True North Communications Inc., et al., United States District Court, Northern District of Illinois, Eastern Division, Case No. 97-C-8263, (December 7, 1997).

Deposition of Daniel R. Fischel in Re:  Glendale Federal Bank FSB v. United States of America, United States Court of Federal Claims, No. 90-772C, (August 27 and 28, 1997).

Testimony of Daniel R. Fischel in Re:  AUSA Life Insurance Company, et al. v. Ernst & Young, in the United States District Court, Southern District of New York, Master File No. 94 CIV. 3116 (CLB) (July 7 and 8, 1997).

Deposition of Daniel R. Fischel in Re:  Santa's Best, f/k/a National Rennoc, an Illinois general partnership, and Tinsel/Ruff Group Limited Partnership, an Illinois limited partnership v. Rennoc Limited Partnership, a New Jersey limited parternship, v. Tinsel/Ruff Group Limited Partnership, an Illinois limited partnership, in the Circuit Court of Cook, Illinois County Department - Chancery Division, No. 95 CH 12160, (June 17, 1997).

Arbitration of Daniel R. Fischel in Re:  Lerner v. Goldman Sachs, et. al., Before the American Arbitration Association, 75-136-00090-94 (April 10, 1997).

Affidavit of Daniel R. Fischel in Re:  Hilton Hotels Corporation and HLT Corporation v. ITT Corporation, United States District Court, District of Nevada, CV-S-97-00095-PMP (RLH) (March 24, 1997).

Deposition of Daniel R. Fischel in Re:  Glendale Federal Bank, FSB v. United States of America, Washington, D.C., Case No. 90-772C, (March 19, 1997; January 30 and 31, 1997).

Deposition of Daniel R. Fischel in Re:  Statesman Savings Holding Corporation v. United States of America, Washington, D.C., Case No. 90-773-C, (February 19 and 20, 1997).

Testimony of Daniel R. Fischel in Re:  Westcap Enterprises, Inc. and Westcap Corporation, Debtor; in the United States Bankruptcy Court, for the Southern District of Texas, Houston Division, Houston, Texas; Case No. 96-43191-H2-11, (November 1996).

Testimony of Daniel R. Fischel in Re:  United States of America v. Robert R. Krilich, in the United States District Court, Northern District of Illinois, Eastern Division, No. 94 CR 419, (August 20, 1996 and July 15, 1996)

Deposition of Daniel R. Fischel in Re:  McMahan & Company, Froley, Revy Investment Co., Inc. and Wechsler & Krumholz, Inc. v. Wherehouse Entertainment, Inc., Louis A. Kwiker, George A. Smith, Michael T. O'Kane, Lawrence K. Harris, et al., United States District Court, Southern District of New York, Index No. 88 Civ. 0321 (SS) (AJP), (July 16, 1996 and June 10, 1996).

Deposition of Daniel R. Fischel in Re:  Joseph W. and Helen B. Teague, Steven Allen Barker, Rita Strahowski, Swannee Beck, and Lifetime Partners of PTL, as representatives of a nationwide class consisting of 150,129 Lifetime Partners and of 27,839 persons who have partially paid for Lifetime Partnerships v.  James O. Bakker, in the United States District Court for the Western District of North Carolina, Civil Action No. 3:87CV514, (June 28, 1996).

Deposition of Daniel R. Fischel in Re:  Snapple Beverage Corporation Securities Litigation, in the United States District Court, Eastern District of New York, Master File No. CV 94-3647 (May 30, 1996).

Testimony of Daniel R. Fischel in Re:  Chuck Quackenbush, Insurance Commissioner of the State of California, in his capacity as Trustee of Mission Insurance Company Trust, et al. v. Borg-Warner Corporation, Borg Warner Equities Corporation, Borg-Warner Insurance Service, Inc., et al., for the Superior Court of the State of California, for the County of Los Angeles, No. C688487 (April 18, 1996).

Deposition of Daniel R. Fischel in Re:  Chuck Quackenbush, Insurance commissioner of the State of California, in his capacity as Trustee of Mission Insurance Company Trust, et al. v. Borg-Warner Corporation, Borg Warner Equities Corporation, Borg-Warner Insurance Service, Inc., et al., for the Superior Court of the State of California, for the County of Los Angeles, No. C688487 (April 17, 1996).

Deposition of Daniel R. Fischel in Re:  Household Commercial Financial Services, Inc. a citizen of the states of Delaware and Illinois v. Julius Trump, a citizen of the State of Florida, Edmond Trump, a citizen of the state of Florida, James M. Jacobson, a citizen of the State of New York, and Parker, Chapin, Flattau & Klimpl, a citizen of the states of New York and New Jersey, in the United States District Court, for the Northern District of Illinois Eastern Division, 92 C 5010 (February 1, 1996).

Deposition of Daniel R. Fischel in Re:  JWP, Inc. Securities Litigation, in the United States District Court, Southern District of New York, Master File No. 92 Civ. 5815 (CLB); AUSA Life Insurance Company, et al. v. Ernst & Young, in the United States District Court, Southern District of New York, Master File No. 94 Civ. 3116 (CLB) (November 30, 1995; November 9, 1995; October 18 and 19, 1995; September 28, 1995).

Deposition of Daniel R. Fischel in Re:  City of Houston Municipal Employees Pension System, a Texas association v. PaineWebber Group Inc., et al., in the United States District Court, Eastern District of Missouri, Eastern Division, No. 4:94CV0073CAS (November 15 and 16, 1995).

Testimony of Daniel R. Fischel In Re: American Continental Corporation/Lincoln Savings & Loan Securities Litigation - Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach and Kevin P. Roddy, in the United States District Court , District of Arizona, Civ-93-1087-PHX-JMR (July 25 and 26, 1995).

Deposition of Daniel R. Fischel in Re:  Keith C. Bogard, et al., v. National Community Bank Inc., et al., in the United States District Court, District of New Jersey, No. 90-5-32 (HAA) (December 20, 1994).

Deposition of Daniel R. Fischel in Re:  Harvey Rosen, Ben Rogers and Julie Rogers v. Deloitte & Touche, Elias Zinn, Julius Zinn, Dennis Lamm, and Ronald Begnaud, in the 268th Judicial District Court, of Fort Bend County, Texas, Cause No. 84-482 (November 9, 1994).

Testimony of Daniel R. Fischel in Re:  PPM America, Inc., et al. v. Marriott Corporation et al., in the United States District Court, for the District of Maryland, Civil Docket No. H-92-3068 (October 12, 1994).

Deposition of Daniel R. Fischel in Re:  Browning-Ferris Industries, Inc., Securities Litigation, United States District Court, for the Southern District of Texas, Houston Division, Civil Action H-903477 (September 1, 1994).

Testimony of Daniel R. Fischel in Re:  Computer Associates International Inc. Securities Litigation, United States District Court, Eastern District of New York, CV-90-2398 (JBW) (May 26 and 27, 1994).

Deposition of Daniel R. Fischel in Re:  PPM America, Inc., et al. v. Marriott Corporation et al., United States District, for the District of Maryland, H-92-3068 (May 10, 1994 and March 8, 1994).

Deposition of Daniel R. Fischel in Re:  Securities and Exchange Commission v. Shared Medical Systems Corporation, R. James Macaleer, James C. Kelly and Clyde M. Hyde, United States District Court, for the Eastern District of Pennsylvania, Civil Action - Law: No. 91-CV-6549 (February 22, 1994).

Testimony of Daniel R. Fischel in Re:  Peter M. Schultz and Pamela A. Schultz v. Rhode Island Hospital Trust National Bank, N.A., et al., United States District Court, District of Massachusetts, Civil Action No. 88-2870-T (February 16, 1994).

Deposition of Daniel R. Fischel in Re:  Henry T. Endo, et al. v. John M. Albertine, et al., United States District Court, Northern District of Illinois, Eastern Division, No. 88 C 1815 (November 11 and 12, 1993; October 28, 1993).

Deposition of Daniel R. Fischel in Re:  Computer Associates International Inc. Securities Litigation, United States District Court, Eastern District of New York, CV 90-2398 (JBW) (November 2, 1993 and February 4, 1993).

Affidavit of Daniel R. Fischel in Re:  Peter M. Schultz and Pamela A. Schultz v. Rhode Island Hospital Trust National Bank, N.A. et al., United States District Court, District of Massachusetts, Civil Action No. SS-2870-T (October 28, 1993).

Deposition of Daniel R. Fischel in Re:  Alpheus John Goddard, III, etc. v. Continental Bank N.A., etc., State of Illinois, County of Cook, Circuit Court of Cook County, County Department-Chancery Division, No. 89 CH 1081 (September 10, 1993).

Deposition of Daniel R. Fischel in Re:  Taxable Municipal Bond Section "G" Securities Litigation, United States District Court, Eastern District of Louisiana, MDL No. 863 (September 2, 1993).

Reply Affidavit of Daniel R. Fischel in Re:  Columbia Securities Litigation, United States District Court Southern District of New York, 89 Civ. 6821 (LBS) (August 30, 1993).

Affidavit of Daniel R. Fischel in Re:  Consumers Gas & Oil, Inc. v. Farmland Industries, Inc., et al., United States District Court, for the District of Colorado, Civil Action No. 92-F-1394 (August 26, 1993).

Declaration of Daniel R. Fischel in Re.  Equitec Rollup Litigation, United States District Court for the Northern District of California, Master file No. C90 2064 CAL (July 28, 1993).

Deposition of Daniel R. Fischel in Re:  United Telecommunications, Inc.  Securities Litigation, United States District Court for the District of Kansas, No.  90-2251-0 (July 22, 1993, April 21 and 22, 1993).

Deposition of Daniel R. Fischel in Re:  Consumers Gas & Oil, Inc., a Colorado farm cooperative in liquidation, on behalf of itself and others similarly situated v. Farmland Industries, Inc., a Kansas farm cooperative, et al., United States District Court, District of Colorado, 92-F-1394 (June 18, 1993).

Deposition of Daniel R. Fischel in Re.  Rosalind Wells v.  HBO & Company, United States District Court, Northern District of Georgia, Atlanta Division, 8-87-CV-657A (JTC) (June 10, 1993 and May 24, 1993).

Deposition of Daniel R. Fischel in Re:  Equitec Rollup Litigation, United States District Court, Northern District of California, No. C-90-2064 CAL (June 2 and 3, 1993).

Supplemental Declaration of Daniel R. Fischel in Re:  Oracle Securities Litigation, United States District Court, Northern District of California, Master File No. C 90 0931 VRW (May 20, 1993).

Affidavit of Daniel R. Fischel and Kenneth R. Cone in Re:  Raymond P. Hayden, et al. v. Jeffrey L. Feldman, et al., United States District Court, Southern District of New York No. 88 Civ. 8048 (JES) (May 12, 1993).

Testimony of Daniel R. Fischel in Re:  Melridge, Inc., Securities Litigation, United States District Court for the District of Oregon, CV No. 87-1426-FR (May 4 and 5, 1993).

Declaration of Daniel R. Fischel in Re:  Oracle Securities Litigation, United States District Court, Northern District of California, Master File No. C 90 0931 VRW (April 20, 1993).

Deposition of Daniel R. Fischel in Re:  Gillette Securities Litigation, United States District Court, District of Massachusetts, No. 88-1858-K (April 1, 1993).

Affidavit of Daniel R. Fischel in Re:  Columbia Securities Litigation, United States District Court, Southern District of New York, 89 Civ. 6821 (LBS) (March 25, 1993).

Deposition of Daniel R. Fischel in Re:  Westinghouse Securities Litigation, United States District Court, Western District of Pennsylvania, CV No. 91 354 (March 23, 1993).

Declaration of Daniel R. Fischel in Re:  Oracle Securities Litigation, United States District Court, Northern District of California, Master File No. C 90-0931 VRW (March 22, 1993).

Deposition of Daniel R. Fischel in Re:  <u>Kroy, Inc., a Minnesota corporation et al.</u> v. <u>Bankers Trust New York Corporation, et al.</u>, Superior Court of the State of Arizona in and for the County of Maricopa, No. CV 89-35680 (March 18, 1993).

Deposition of Daniel R. Fischel in Re:  <u>Amos M. Ames, Helen M. Ames, Robert F. Bourke, Louise L. Bourke, Leo E. Corr, April C. Corr, Wence M. Horak, Ruth Horak, Robert T. Freas, Maurita Freas, Bruce Fink, Jr., William H. Jones, Candace A. Jones, Richard Paul, William L. Paul, Carole Paul, Steven J. Paul, Best Power Technology, Incorporated, and Best Power Technology Sales Corporation</u>, in the State of Wisconsin, Circuit Court, Juneau County, Consolidated Case Nos. 92-CV-31, 92-CV-32 (January 26, 1993).

Deposition of Daniel R. Fischel in Re:  <u>Federal Express Corporation Shareholder Litigation</u>, in the United States District Court, Western District of Tennessee, Master File No. 90-2359-4B (December 3, 1992).

Deposition of Daniel R. Fischel in Re:  <u>Raymond Snyder, Individually and on behalf of all those similarly situated</u> v. <u>Oneok, Inc., et al.</u>, in the United States District Court, Northern District of Oklahoma, Civil Action No. 88 C 1500 E (October 15 and 16, 1992).

Deposition of Daniel R. Fischel in Re:  <u>Melridge, Inc. Securities Litigation, Consolidated Actions</u>, United States District Court, District of Oregon, Master File No. CV87-1426-JU and Nos. 387-06589-P11, 88-05-JU, 88-221-JU, 88-0699-PA, 88-1266-JU (September 17, 1992; July 25 and 26, 1991).

Deposition of Daniel R. Fischel in Re:  <u>Maxus Corporate Company</u> v.  <u>Kidder, Peabody & Co. Incorporated, Martin A. Siegel and Ivan F. Boesky</u>, in the District Court Dallas County, Texas, 298th Judicial District, No. 87-15583-M (September 11, 1992; August 18 and 19, 1992).

Deposition of Daniel R. Fischel in Re:  <u>Jennifer A. Florin and Alan L. Mundt, on behalf of themselves and all others similarly situated</u> v. <u>Wesray Capital Corp., Citizens and Southern Trust Company, a subsidiary of Citizens and Southern Corporation, Robert K. Barton, Leonard S. Gaby, Allen G. Lacoe, Robert A. Magnusson, Anthony A. Saliture, Harlan B. Smith, Thomas F. Stutzman, Raymond G. Chambers, Frank E. Richardson, E. Burke Ross, Jr., William E. Simon and Frank W. Walsh, Jr.</u>, in the United States District Court, Western District of Wisconsin, Civil Action No. 91C-0948 (August 12, 1992).

Deposition of Daniel R. Fischel in Re:  <u>Pearl Newman, Shanna Lehmann & Athanasios Tsivelekidis, on their own behalf and on behalf of all other persons similarly situated</u> v. <u>On-Line Software International, Inc. Jack M. Berdy, John C. Crocker, Richard A. Granger, Richard R. Holtmeier, Michael S. Juceam, Edward J. Siegel, Howard P. Sorgen and Richard Ward</u>, United States District Court, District of New Jersey, Consolidated Civil Action Nos.  88-3247, 88-3411 (July 28 and 29, 1992).

Deposition of Daniel R. Fischel in Re:  <u>Crazy Eddie Securities Litigation, Oppenheimer-Palmieri Fund, I.P., et al.</u> v. <u>Peat Marwick Main & Co., et al.</u>, United States District Court for the Eastern District of New York, 87 Civ. 0033 (EHN), 88 Civ. 3481 (EHN) (June 11, 1992; March 26 and 27, 1992).

Testimony of Daniel R. Fischel in Re:  <u>American Continental Corporation/Lincoln Savings and Loan Securities Litigation</u>, in the United States District Court, for the District of Arizona MDL Docket No. 834 (June 4, 1992; May 26, 27 and 28, 1992).

Testimony of Daniel R. Fischel in Re: <u>State of West Virginia</u> v. <u>Morgan Stanley & Co. Incorporated</u>, in the Circuit Court of Kanawha County, State of West Virginia, Civil Action No. 89-C-3700 (April 27, 1992).

Affidavit of Daniel R. Fischel in Re: <u>William Steiner, on behalf of himself and all others similarly situated</u> v. <u>Tektronix, Inc., et al.</u>, in the United States District Court, District Court of Oregon, Civil No. 90-587-JO (March 23, 1992).

Deposition of Daniel R. Fischel in Re: <u>Martin Kaplan and Selma Kaplan, on Behalf of Themselves and All Others Similarly Situated</u> v. <u>VICORP Restaurants, Inc., Charles R. Frederickson, Robert S. Benson, Emerson B. Kendall, Robert T. Marto and Johyn C. Hoyt</u>, United States District Court, District of Colorado, Civil Action No. 90-C-2182 (February 11, 1992).

Deposition of Daniel R. Fischel in Re: <u>Interco Incorporated</u> v. <u>Wasserstein, Perella & Co., Inc.</u>, United States District Court, Eastern District of Missouri, Eastern Division, No. 91-0151-C-6 (February 3, 1992 and December 12, 1991).

Statement of Daniel R. Fischel in Re: <u>Far West Federal Bank, S.B., et al.</u> v. <u>Director, Office of Thrift Supervision, et al.</u>, United States District Court for the District of Oregon, Civil Action No. 90-103 PA (February 3, 1992).

Deposition of Daniel R. Fischel in Re: <u>Capital Bank of California</u> v. <u>Morgan Stanley & Co., Incorporated</u>, United States District Court, Central District of California, No. 91-1650-R (January 24, 1992).

Deposition of Daniel R. Fischel in Re: <u>Trinity Ventures, et al.</u> v. <u>Federal Deposit Insurance Corporation</u>, in its own capacity and as successor to the Federal Savings and Loan Insurance Corporation, United States District Court, for the District of Oregon, No. 90-103-PA (January 6, 1992).

Deposition of Daniel R. Fischel in Re: <u>First Republicbank Securities Litigation</u>, United States District Court, Northern District of Texas, Dallas Division, Civil Action No. 3-88-0641-H (January 2, and 3, 1992; November 26, 1991).

Deposition of Daniel R. Fischel in Re: <u>State of West Virginia</u> v. <u>Morgan Stanley & Co. Incorporated; Salomon Brothers Inc.; and Goldman Sachs & Co.</u>, in the Circuit Court of Kanawha County, State of West Virginia, Civil Action No. 89-C-3700 (December 19 and 20, 1991).

Deposition of Daniel R. Fischel in Re: <u>The Regina Company, Inc. Securities Litigation</u>, United States District Court, District of New Jersey, Civil Action No. 88-4149 (HAA) (October 31, 1991).

Affidavit of Daniel R. Fischel in Re: <u>Gillette Securities Litigation</u>, United States District Court, District of Massachusetts, Civil Action No. 88-1858-K (October 7 1991).

Deposition of Daniel R. Fischel in Re: <u>Capital Maritime Corporation</u> v. <u>Amfels, Inc., Far East Levingston Shipbuilding Ltd., John B. Allison and Patrick A. McDermid</u>, United States District Court for the Southern District of Texas Houston Division, C.A. No. H-90-3417 (September 12, 1991).

Deposition of Daniel R. Fischel in Re: <u>Thomas J. Caldarone, Jr.</u> v. <u>Isidore Brown, et al.</u>, and <u>John E. Washburn, et al.</u> v. <u>Isidore Brown, et al.</u>, United States District Court, Northern District of Illinois, Eastern Division, Docket Nos. 80 C 6251 and 81 C 1475 (August 28, 29, and 30, 1991).

Testimony of Daniel R. Fischel in <u>Re: Apple Securities Litigation</u>, United States District Court, Northern District of California, Northern Division, Docket No. C-84-20148 (May 20 and 21, 1991).

Testimony of Daniel R. Fischel in Re: <u>The Stuart-James Co., Inc., et al. Litigation</u>, United States of America before the Securities & Exchange Commission, in Denver, Colorado, Administrative Proceeding File No. 3-7164 (May 6, 1991).

Deposition of Daniel R. Fischel in Re: <u>Jennie Farber on behalf of herself and all others similarily situated</u> v. <u>Public Service Company of New Mexico; Jerry D. Geist; John P. Bundrant and Albert J. Robison</u>, United States District Court for the District of New Mexico, CIV 89-456 JB WWD (April 17 and 18, 1991).

Affidavit of Daniel R. Fischel in Re: <u>Moise Katz, Frederick Rand, Elias Weissman, Richard D. Morgan, Marion R. Morgan and Mortimer Schulman</u> v. <u>Raymond A. Hay</u>, United States District Court, Southern District of New York, No. 86 Civ. 5640 (JES) (March 29, 1991).

Deposition of Daniel R. Fischel in Re: <u>Standard Chartered PLC., a United Kingdom corporation, et al.</u> v. <u>Price Waterhouse, a general partnership</u>, Superior Court of the State of Arizona, in and for the County of Maricopa, CV 88-34414 (March 13 and 14, 1991).

Affidavit of Daniel R. Fischel in Re: <u>United States of America</u> v. <u>AVX Corporation</u>, and <u>Commonwealth of Massachusetts</u> v. <u>AVX Corporation</u>, United States District Court, District of Massachusetts, Civil Action Nos. 83-3882-Y and 83-3899-Y (January 29, 1991).

Deposition of Daniel R. Fischel in Re: <u>Apple Computer Securities</u>, United States District Court Northern District of California, San Jose Division, No. C-84-20148 (a) JW (December 13 and 14, 1990).

Deposition of Daniel R. Fischel in Re: <u>Polycast Technology Corporation, and Uniroyal Plastics Acquisition Corp.</u> v. <u>Uniroyal, Inc., et al.</u>, United States District Court Southern District of New York, No. 87 Civ. 3297 (December 6, 1990 and November 28, 1990).

Deposition of Daniel R. Fischel in Re: <u>Ellen Rudd, on behalf of herself and all others similarly situated, and Mayer Corporation on behalf of themselves, and all others similarly situated, and Louis Brandt, and Israel Baker, Jay R. Kuhne, Pininfarina Corp., and American Transfer Co., on behalf of themselves and all others similarly situated</u> v. <u>Kirk Kerkorian, et al.</u>, Superior Court of the State of California, County of Los Angeles, Nos. CA 000980, CA 000981, CA 001017, CA 620279 (June 21, 1990).

Testimony of Daniel R. Fischel in Re: <u>City of San Jose</u> v. <u>Paine, Webber, Jackson & Curtis, Incorporated, et al., and related counter- and Third-Party Claims</u>, United States District Court, Northern District, No. C-84-20601 RPA (May 23 and 24, 1990).

Deposition of Daniel R. Fischel in Re:  City of San Jose v. Paine, Webber, Jackson & Curtis, Incorporated, et al., and related counter- and Third-Party Claims, United States District Court, Northern District, No. C-84-20601 RPA (May 22, 1990), No. RPA 84-20601 (November 16, 1989 and September 8, 1989).

Testimony of Daniel R. Fischel in Re:  Kulicke and Soffa Industries, Inc. Securities Litigation, United States District Court for the Eastern District of Pennsylvania, No. 86-1656 (March 20 and 21, 1990).

Deposition of Daniel R. Fischel in Re:  Kulicke and Soffa Industries, Inc. Securities Litigation, United States District Court for the Eastern District of Pennsylvania, No. 86-1656 (March 9, 1990; December 19 and 21, 1989).

Affidavit of Daniel R. Fischel in Re:  Viacom International Inc. v. Carl C. Icahn, et al., v. Ralph M. Baruch, et al., United States District Court, Southern District of New York, No. 86 Civ. 4215 (RPP) (March 8, 1990).

Deposition of Daniel R. Fischel in Re:  Technical Equities Coordination Litigation, Superior Court of the State of California for the County of Santa Clara, Master File No. 1991, Santa Clara County Superior No. 600306 (March 1, 1990).

Deposition of Daniel R. Fischel in Re:  Amalgamated Clothing and Textile Workers Union, AFL-CIO, et al. v. David A. Murdock, et al., United States District court for the Central District of California, No. CV-86-6410 IH (February 8, 1990).

Deposition of Daniel R. Fischel in Re:  Connecticut National Life Insurance Company, et al. v. Peter A.. Sprecher and Laventhol & Horwath, United States District Court, Central District of California, No. CV 87-1945 WJR (Tx) (January 30, 1990).

Deposition of Daniel R. Fischel in Re:  Consolidated Capital Securities Litigation, United States District Court, Northern District of California, No. C-85-7332 AJZ (January 22, 1990).

Declaration of Daniel R. Fischel in Re Plaintiffs' Damages in Re:  Liquidity Fund, et al. v. Southmark Corporation, et al. in the Superior Court of the State of California for the County of San Mateo, No. 332435 (January 18, 1990).

Deposition of Daniel R. Fischel in Re:  Norman Kamerman, Shirley Brown, Edward Rosen, Lexim Investors Corp., and Dohsa Anstalt, on behalf of themselves and all others similarly situated, and Barnett Stepak v. Saul Steinberg, Reliance Group Holdings, Inc., Reliance Group, Inc., Reliance Financial Services corp., and Reliance Insurance Company, United States District Court, Southern District of New York, No. 84 Civ. 4440 (September 13, 1989).

Affidavit of Daniel R. Fischel in Re:  Edward A. Taylor, et al. v. A. O. Smith Corporation et al., Circuit Court for Lincoln County, Tennessee, No. 098-84 (August 11, 1989).

Deposition of Daniel R. Fischel in Re:  Container Products Inc. v. Pace Industries, United States District Court, Southern District of New York, No. 88-CIV. 3549 (KMW) (July 19, 1989).

Deposition of Daniel R. Fischel in Re:  Joseph B. Moorman, et al. v. Southmark Corporation, et al., Liquidity Fund, et al. v. Southmark Corporation, et al., Superior Court of the State of California for the County of San Mateo, Nos. 322135 and 332435 (July 11, 1989).

Testimony of Daniel R. Fischel in Re:  Tessie Wolfson, et al. v. Frederick S. Hammer, and Meritor Financial Group, United States District Court for the Eastern District of Pennsylvania, Civil Action No. 87-8471 (June 20, 1989).

Deposition of Daniel R. Fischel in Re:  Richard J. Heckmann, et al. v. C. L. Ahmanson, et al., and Consolidated Cases, Superior Court of the State of California for the County of Los Angeles, Nos. CA000851 and C642081 (June 8, 1989).

Deposition of Daniel R. Fischel in Re:  Tessie Wolfson, et al. v. Frederick S. Hammer, United States District Court for the Eastern District of Pennsylvania, Civil Action No. 87-8472 (May 11, 1989).

Testimony of Daniel R. Fischel in Re:  Tessie Wolfson, et al. v. Frederick S. Hammer, United States District Court for the Eastern District of Pennsylvania, Civil Action No. 87-8472 (April 13, 1989).

Deposition of Daniel R. Fischel in Re:  National Union Fire Insurance Company of Pittsburgh, PA v. Wells Fargo Bank, N.A., District Court of Harris County, Texas, 125th Judicial District, No. 88-49246 (April 10 and 11, 1989).

Deposition of Daniel R. Fischel in Re:  Susan Rothenberg, as Custodian for Stephen J. Rothenberg v. Charles E. Hurwitz, United Financial Corporation, United Savings Association of Texas, et al., United States District Court for the Southern District of Texas, Houston Division, Civil Action No. H-86-1435 (March 30, 1989).

Deposition of Daniel R. Fischel in Re:  Jose Nodar, et al. v. William Weksel, Albert Bromberg, Henry B. Turner, IV, Frank L. Bryant, Leo Kuperschmid, Bennett S. Lebow, Ernst & Whinney and Oppenheimer & Co., Inc., United States District Court, Southern District of New York, No. 84 Civ. 3870 (VLB) and consolidation case No. 84 Civ. 5132 (VLB) (December 15 and 16, 1988).

Deposition of Daniel R. Fischel in Re:  William Steiner, et al. v. Whittaker Corporation, et al., Superior Court of the State of California for the County of Los Angeles, No. CA000817 (December 7, 1988).

Deposition of Daniel R. Fischel in Re:  Arnold I. Laven, et al. v. Western Union Corporation, et al., United States District Court for the District, Western District of Washington, MDL No. 551 (August 30 and 31, 1988).

Deposition of Daniel R. Fischel in Re:  Washington Public Power Supply System Securities Litigation, United States District Court, Western District of Washington, MDL No. 551 (August 16 and 22, 1988).

Affidavit of Daniel R. Fischel in Re:  District Business Conduct Committee for District No. 3 v. Blinder, Robinson & Company Inc., et al., National Association of Securities Dealers, Inc. National Business Conduct Committee, Complaint No. DEN-666 (July 21, 1988).

Deposition of Daniel R. Fischel in Re:  Joseph Seidman, et al. v. Stauffer Chemical Company, et al, United States District Court for the District of Connecticut, No. B 84-543 (TFGD) (June 10, 1988 and May 5, 1987).

Deposition of Daniel R. Fischel in Re: <u>Edlin Cattle Co., Inc., and James Edlin</u> v. <u>A. O. Smith Harvestore Products, Inc., et al.</u>, United States District Court for the Northern District of Texas, Amarillo Division, No. CA-2-86-0122 (May 12, 1988).

Deposition of Daniel R. Fischel in Re: <u>MicroPro Securities Litigation</u>, United States District Court for the Northern District of California, No. C-85-7428-EFL (A) (May 2, 1988).

Affidavit of Daniel R. Fischel in Re: <u>Pizza Time Theatre Securities Litigation</u>, United States District Court for the Northern District of California, Civil File No. 84-20048-(A)-RPA (March 25, 1988).

Affidavit of Daniel R. Fischel and Robert A. Sherwin in Re: <u>First National Bank of Louisville</u> v. <u>Brooks Farms, and George C. Brooks, et al., Third-Party Plaintiffs</u> v. <u>A. O. Smith Corporation, et al.</u>, Circuit Court for Maury County, Tennessee, No. 2058 (March 3, 1988).

Testimony of Daniel R. Fischel in Re: <u>Nucorp Energy Securities Litigation</u>, United States District Court for the Southern District of California, M.D.L. 514 (March 15, 16, 17, and 18, 1988).

Deposition of Daniel R. Fischel in Re: <u>Nucorp Energy Securities Litigation</u>, United States District Court for the Southern District of California, M.D.L. 514 (January 27, 1988).

Deposition of Daniel R Fischel in Re: <u>Anheuser-Busch Companies, Inc.</u> v. <u>W. Paul Thayer, et al.</u>, United States District Court for the Northern District of Texas, Dallas Division, No. CA-3-85-0794-R (January 21, 1988; December 4, 1987; and November 5, 1987).

Testimony of Daniel R. Fischel in Re: <u>Securities and Exchange Commission</u> v. <u>First City Finance Corporation Ltd., and Marc Belzberg</u>, United States District Court for the District of Columbia, Civil Action No. 86-2240 (December 18, 1987).

Testimony of Daniel R. Fischel in Re. <u>The Irvine Company</u> v. <u>Athalie Irvine Smith and Athalie R. Clarke, Trustee</u>, State of Michigan Circuit Court for the county of Oakland, Civil Action No. 8327011-CZ (December 14, 15, and 16, 1987).

Deposition of Daniel R. Fischel in Re: <u>Securities and Exchange Commission</u> v. <u>First City Finance Corporation, Ltd. and Marc Belzberg</u>, United States District Court for the District of Columbia, Civil Action No. 86-2240 (December 11, 1987).

Affidavit of Daniel R. Fischel in Re: <u>Gerald D. Broder and Constance D. Broder</u> v. <u>Alphonse H. Bellac and William B. Weinberger</u> v. <u>Combustion Equipment Associates, Inc., et al., and William B. Weinberger</u> v. <u>Coopers & Lybrand</u>, United States District Court for the Southern District of New York, 80 CIV 6175 (CES) 80 CIV 6839 (CES) 84 CIV 8217 (CES) (July 22, 1987).

Deposition of Daniel R. Fischel in Re: <u>The Irvine Company</u> v. <u>Athalie Irvine Smith and Athalie R. Clarke, Trustee</u>, State of Michigan, Circuit Court for the County of Oakland, Civil Action No. 83270011-CZ (June 1, 1987).

Deposition of Daniel R. Fischel in Re: <u>Fortune Systems Securities Litigation</u>, United States District for the Northern District of California, Master File No. 83-3348A-WHO (May 7, 1987).

Deposition of Daniel R. Fischel in Re:  Victor Technologies Securities Litigation, United States District Court for the Northern District of California, Master File No. C-83-3906(A)-RFP (FW) (January 8, 1987 and October 30, 1986).

Reply Declaration of Daniel R. Fischel in Support of the Motion by the Activision Defendants for Summary Judgment in Re:  Activision Securities Litigation, United States District Court for the Northern District of California, Master File No. C-83-4639(A)-MHP (October 27, 1986).

Testimony of Daniel R. Fischel in Re:  NVHomes, L.P. v. Ryan Homes, Inc.; and Ryan Homes, Inc. v. NVHomes, L.P., et al., United States District Court for the Western District of Pennsylvania, Civil Action No. 86-2139 (October 24, 1986).

Supplemental Affidavit of Daniel R. Fischel in Re:  NVHomes, L.P. v. Ryan Homes, Inc.; and Ryan Homes, Inc. v. NVHomes, L.P. and NVAcquisition L.P., et al., United States District Court the Western District of Pennsylvania, Civil Action No. 86-2139 (October 24, 1986).

Affidavit of Daniel R. Fischel in Support of the Motion by the Activision Defendants for Summary Judgment in Re:  Activision Securities Litigation, United States District Court for the Northern District of California, Master File No. C-86-2139 (October 20, 1986).

Declaration of Daniel R. Fischel in Support of the Motion by the Activision Defendants for Summary Judgment in Re:  Activision Securities Litigation, United States District Court for the Northern District of California, Master File No. C-83-4639(A)-MHP (October 2, 1986).

Affidavit in Support of Defendants Motion for Summary Judgment in Re:  MCorp Securities Litigation, United States Court for the Southern District of Texas, Civil Action No. H-85-5894 (September 25, 1986).

Deposition of Daniel R. Fischel in Re:  Activision Securities Litigation, United States District Court for the Northern District of California, No. C 83 4639 (August 18 and 19, 1986).

Deposition of Daniel R. Fischel in Re:  John Mancino v. James A. McMaghan, et al., United States District Court for the Northern District of California, Civil No. C-84-0407-TEH (August 14, 1986).

Testimony of Daniel R. Fischel in Re:  Charles W. Leigh, et al. and George Johnson, et al. v. Clyde William Engle, et al., United States District Court for the Northern District of Illinois, Eastern Division, Case No. 78 C 3799 (August 1, 1986).

Reply Affidavit of Daniel R. Fischel in Re:  The Amalgamated Sugar Company v. NL Industries, United States District Court for the Southern District of New York, 86 Civ. 5010 (VLB) (July 28, 1986).

Affidavit of Daniel R. Fischel in Re:  The Amalgamated Sugar Company v. NL Industries, United States District Court for the Southern District of New York, 86 Civ. 5010 (VLB) (July 18, 1986).

Deposition of Daniel R. Fischel in Re:  Charles W. Leigh, et al. and George Johnson, et al. v. Clyde William Engle, et al., United States District Court for the Northern District of Illinois, Eastern Division, Case No. 78 C 3799 (July 1, 1986).

Deposition of Daniel R. Fischel in Re:  Seafirst Corporation v. William M. Jenkins, et al.; and Seafirst Corporation v. John R. Boyd, et al., United States District Court for the Western District of Washington at Seattle, Case No. C83-771R (February 27, 1986).

Deposition of Daniel R. Fischel in Re:  Kreindler v. Sambo's Restaurants, Inc., United States District Court for the Southern District of New York, Case No. 79 Civ. 4538 (December 17, 1985).

Affidavit of Daniel R. Fischel in Re:  United States of America v. S. Richmond Dole and Clark J. Matthews II (March 19, 1985).

Deposition of Daniel R. Fischel in Re:  Craig T. McFarland, et al. v. Memorex Corporation, United States District Court for the Northern District of California, No. C 79-2926-WAI, C 79-2007-WAI, C 79-241-WAI (February 26, 1985; January 29 and 30, 1985).

Testimony of Daniel R. Fischel in Re:  Robert J. Lawrence v. Grumman Corp. Pension Plan, et al., United States District Court for the Eastern District of New York, No. CV-81-3530 (December 19, 1983).

Testimony of Daniel R. Fishel in Re:  Telvest, Inc. v. Junie L. Bradshaw, et al. and American Furniture Company, United States District Court, for the Eastern District of Virginia Richmond Division, No. CA-79-0722-R (December 4, 1981).

## **OTHER ACTIVITIES**

Member, American Economic Association, American Finance Association.

Member of the Board of Overseers of the Becker-Friedman Institute at the University of Chicago.

Former Advisor to the Harvard Program on Corporate Governance at Harvard University.

Former Member, Board of Directors, Center for the Study of the Economy and the State.

Former Member, Mid-America Institute Task Force on Stock Market Collapse.

Have acted as a consultant and/or advisor to the New York Stock Exchange, the National Association of Securities Dealers, the Chicago Board of Trade, the Chicago Board Options Exchange, the Chicago Mercantile Exchange, the New York Mercantile Exchange, the Federal Trade Commission, the Department of Labor, the Securities and Exchange Commission, the Canadian Securities and Exchange Commission, the United States Department of Justice, the Federal Deposit Insurance Corporation, the Resolution Trust Corporation, the Federal Housing Finance Agency, and the Office of Thrift Supervision.

Referee, Journal of Financial Economics, Journal of Law and Economics, Journal of Legal Studies.

Participant and speaker at multiple conferences on the Economics of Corporate, Securities and Commodities Law and the Regulation of Financial Markets.

Former Chairman, American Association of Law Schools' Section on Law and Economics.

### Appendix B: Materials Considered

- CFTC's 10/18/15 Complaint and all attachments thereto;

- CFTC's 11/9/15 Memorandum in Support of Motion for Preliminary Injunction and all exhibits thereto;

- CFTC 11/24/2015 production -- CFTC_ORDER_DATA 1 (order data);

- CFTC 12/23/2015 -- CFTC_ORDER_DATA 2-5 (data dictionaries);

- CFTC 1/7/2016 production -- CFTC1-12 (computer code) ;

- CFTC's 2/11/2016 production -- CFTC 0234038-234095 (ZN data and updated version of Bessembinder code);

- Trial transcript from United States v. Coscia, 2014-cr-00551 (N.D. Ill.);

- 3Red's Wells submissions -- 5/27/14, 9/12/14, 9/24/14, 12/3/2014, 7/10/2015, 8/13/2015;

- CFE 1/15/2016 production: CFE 1 - CFE 54;

- Advantage 1/15/2016 production: Advantage 1 - Advantage 4077;

- CFE 1/20/2016 production: CFE 55 - CFE 260;

- Citadel 1/22/2016 production: Citadel 1 - Citadel 123;

- CFE 1/25/2016 production: CFE 261-14306;

- Advantage 1/27/2016 production: Advantage 4078 - Advantage 5201;

- CFE 1/28/2016 production: CFE 14307 - CFE 23773;

- CFE 2/2/2016 production : CFE 23774 - CFE 24098;

- Citadel 2/2/16 production: Citadel 124 - Citadel 893;

- Plaintiff's 2/16/16 Response to Defendants First Set of Interrogatories ;

- CME Group RA 1405-5, August 29, 2014;

- Publicly available materials listed on Bessembinder Report, Appendix B;

- "The Flash Crash: A New Deconstruction," by E. Aldrich, J. Grundfest, and G. Laughlin, January 25, 2016 draft, pp. 1 - 43.